Filed 9/16/13  P. v. Gaytan CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054960 |
| v. | (Super.Ct.No. FSB703383) |
| MARIO ALBERTO GAYTAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sabrina Lane-Erwin and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Mario Alberto Gaytan appeals from the trial court's order terminating his probation and ordering the previously suspended 23-year prison sentence to be

1

executed. Defendant argues: 1) the evidence is insufficient to support the finding that he violated the term of his probation that he violate no law by committing auto burglary because there is no admissible evidence that the door of the car was locked; 2) the court prejudicially erred when it admitted his post-arrest statement because he is a Spanish speaker and did not knowingly waive his rights under *Miranda v. Arizona* (1966) 384 U.S. 426 (*Miranda*); and 3) the court prejudicially erred when it admitted unreliable hearsay regarding the ownership of the vehicle in question and whether the vehicle in which he was riding had itself been stolen. As discussed below, we affirm the judgment.

## FACTS AND PROCEDURE

On April 21, 2008, defendant pled guilty to transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), and admitted a drug quantity allegation of more than ten kilograms (Health & Saf. Code, § 11370.4, subd. (b)(3)), two drug trafficking prior convictions (Health & Saf. Code, § 11370.2, subd. (c)) and three prison priors (Pen. Code, § 667.5, subd. (b)). As part of the plea the trial court imposed a 23-year prison term, but stayed it pending defendant's successful completion of five years of formal probation, including 365 days in local custody.

On October 13, 2009, defendant was arrested and charged with auto burglary (Pen. Code, § 459) based on events earlier that day.

On August 3, 2010, the People filed a petition seeking to revoke defendant's probation. The probation revocation hearing took place on February 4, 2011, at which the following testimony was heard. A security guard at a Redlands apartment complex testified that, at about 5:30 a.m. on October 13, 2009, he noticed a red Mazda CX7

2

backed into a parking space. The car had not been there earlier, the guard did not recognize the car as belonging to a resident, and residents knew they were required to park face-in. When the guard went over to look at the Mazda, he noticed defendant and another male inside a gray Ford Probe. The guard knew the person who owned the Ford and he did not recognize these men as being that person. The guard also lived in the apartment complex. He believed the two men should not be in the Ford. As he walked past the Ford, the two men got out of the car. The guard greeted the men and walked around the corner to call police.

When the guard returned to the parking lot, he saw the two men walk toward the red Mazda and get into it. They left the parking space, drove to another space, and parked head-in. When police arrived, the guard directed them to the Mazda. The two men were crouching on the asphalt in front of the Mazda, apparently hiding. The guard also directed police to the apartment where he knew the owner of the gray Ford lived.

Police Officer McMeans testified that he went to speak with the tenant whom the guard indicated owned the Ford, and asked him to show proof of ownership. The owner showed the officer what appeared to him to be a handwritten bill of sale with the owner's name on it. The bill of sale was not introduced into evidence. Defendant objected to Officer McMeans' testimony about the bill of sale. The owner told Officer McMeans that he had not given anyone permission to enter or drive the Ford. He told the officer that he had parked the car in the apartment parking lot and manually locked it, even though the car window was broken and could not be completely closed, leaving a six-inch gap.

3

Police Officer Elton testified that he called in to dispatch with the vehicle identification number (VIN) of the red Mazda, and was told that it "came back stolen," in that the VIN did not match the license plate. Defense counsel objected to this testimony. No records regarding this were introduced into evidence. Officer Elton also testified that he interviewed defendant at the police station. Defendant answered basic questions in English and so Officer Elton gave him his *Miranda* warnings in English. Defendant told the officer that he owed another man a lot of money, and so was picked up by another man and told to go to Redlands and look for a vehicle to "take." Defendant said he knew he was not supposed to be in the gray Ford, that he did not know what he was doing in the car, and that he was afraid.

Defendant testified, in Spanish through an interpreter, that he had gone to the apartment complex to support and help a friend find out whether his wife was with her boyfriend. He was walking back when he saw police lights. He panicked, ran and hid behind a car. He was never inside a gray Ford or a red Mazda. Defendant denied talking to Officer Elton. He did say he told Officer Elton that he did not understand English.

The court denied defendant's motion to suppress his post-arrest statement to police on the grounds that he spoke Spanish and was not offered an interpreter. The court found by a preponderance of the evidence that defendant violated his probation by committing the auto burglary. The court terminated defendant's probation and ordered him to serve the previously suspended 23-year sentence. This appeal followed.

4

1. *Evidence Insufficient to Support "Locked" Element of Auto Burglary Finding*

Defendant argues the evidence is insufficient to support the auto burglary finding because there is no admissible evidence that the gray Ford Probe was locked. The People agree, but contend the evidence does support a finding that defendant committed misdemeanor auto tampering. After agreeing with the People, we then consider defendant's argument that we must remand the matter to the trial court so it can exercise its discretion with regard to revoking his probation based on misdemeanor auto tampering rather than felony auto burglary.

"Our trial courts are granted great discretion in determining whether to revoke probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445 (*Rodriquez*).) The level of certainty required to support a probation revocation is less than that required to support a criminal conviction. Penal Code section 1203.2, subdivision (a), authorizes probation revocation "if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the [probationer] has violated any of the conditions of his or her probation . . . ." Our Supreme Court has interpreted 'reason to believe' under Penal Code section 1203.2, subdivision (a), to impose a 'preponderance-of-the-evidence' standard of proof. (*Rodriguez,* at p. 446.) A lower threshold is appropriate because "'[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] restrictions . . . .' [Citation.]" (*People v. Coleman* (1975) 13 Cal.3d 867, 877, fn. 8.)

An appellate court will not disturb a decision to revoke a defendant's probation unless it finds the trial court abused its discretion. (*People v. Kelly* (2007) 154 Cal.App.4th 961, 965.) "' . . . [O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . . .'" (*Rodriguez, supra*, 51 Cal.3d at p. 443.) "A trial court abuses its discretion by revoking probation if the probationer did not willfully violate the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 983.)

" . . . [R]eview on appeal is based on the substantial evidence test. Under that standard, our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849, fns. omitted.)

The revocation petition filed on August 3, 2010, charged defendant with violating probation by committing auto burglary. That offense requires the defendant to enter into a locked car with the specific intent to commit a theft or other felony. (Pen. Code, § 459 ["Every person who enters . . . a vehicle . . . when the doors are locked . . . is guilty of burglary."])

Defendant argues that there is no admissible evidence to show that the Ford was locked, and so there is insufficient evidence that he committed felony auto burglary. The only evidence that the door was locked was the hearsay testimony of Officer McMeans that the Ford's owner told him he had locked it. The People concede this point.

6

However, the People argue that the evidence still supports a finding that defendant committed misdemeanor auto tampering (Veh. Code, § 10852), that is, he willfully entered the Ford without the owner's consent and thus violated the term of his probation that he "violate no law."

The crime of misdemeanor auto tampering does not require proof of actual damage to a vehicle. Evidence that defendant entered the unlocked vehicle without permission, and with the intent to commit theft, is enough. (*People v. Mooney* (1983) 145 Cal.App.3d 502, 507) Here, the court heard the security guard's testimony that he saw defendant in the gray Ford Probe on that morning and that he had previously seen only a particular tenant of the apartment complex driving the car. The court also heard Officer Elton's testimony that defendant told him he had come to Redlands to "take" a car because he owned another man a lot of money. This is enough to establish, by a preponderance of the evidence, that defendant committed auto tampering.

Defendant counters that even if the evidence does establish auto tampering, the trial court's exercise of its discretion to terminate his probation and direct him to serve the 23 years was based on its finding of felony auto theft, not misdemeanor tampering. Defendant contends the matter must be remanded to allow the trial court to exercise its fully informed discretion as to whether to terminate his probation or impose a less harsh remedy. As defendant points out, the court in a probation revocation hearing must first determine by a preponderance of the evidence whether the defendant violated the terms of his probation. The second step is for the court to exercise its discretion as to whether

7

the probation should be reinstated, modified or revoked. (*People v. Latham* (1988) 206 Cal.App.3d 27, 29.)

We conclude that remand would be a waste of judicial resources. As the trial court commented in making its findings, "The rule of the trial court here is not to determine whether he's guilty or innocent of a crime but whether he can be safely allowed to remain in society. A different question and a different burden of proof. [¶] . . . [¶] . . . [W]e have his statement to Officer Elton that he was there to take a car. [¶] . . . [¶] . . . [I]t doesn't necessarily matter who the precise owner is . . . . [¶] . . . Mr. Gaytan has violated his probation in this case." Our review of the trial court's findings shows that its main concern was not the exact crime that defendant committed when he violated the probation term that he "violate no law." Rather, the court based its decision to revoke probation on the fact that defendant had come to that parking lot intending to steal a vehicle, and, as it stated, "whether he can be safely allowed to remain in society." We see no likelihood that the court will exercise its discretion any differently on remand.

2. *No Translator was Required*

Defendant contends the trial court erred when it declined to suppress defendant's statement to Officer Elton because his waiver of his *Miranda* rights was unknowing and involuntary for lack of a Spanish language interpreter. We disagree. The court properly allowed the statements into evidence because Officer Elton offered credible testimony that defendant understood him and was able to answer his questions in a manner that did not suggest that appellant needed an interpreter.

In reviewing a defendant's claim that his *Miranda* rights were violated, the appellate court accepts the trial court's resolution of disputed facts and inferences that are supported by substantial evidence and the trial court's determination of witness credibility. (*People v. Cruz* (2008) 44 Cal.4th 636, 667.) The appellate court independently assesses, however, whether a defendant's waiver and statements were voluntary, knowing and intelligent. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1092, overruled on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

Here, the evidence upon which the trial court relied when it determined that defendant's statements were not obtained in violation of *Miranda* for lack of an interpreter is as follows. Officer Elton testified that he did not believe he needed to contact the on-duty Spanish interpreter based on his communications with defendant. Elton first read defendant his *Miranda* rights and took his oral waiver of those rights. He then asked defendant "basic questions for the booking process, name, address; he answered them all correctly." Elton then asked defendant "Tell me what happened" and defendant told him "that he owed somebody a lot of money. He was told to go to Redlands to steal a car." Elton clarified for the judge that defendant had used the word "take" rather than "steal." Elton testified that "He responded appropriately, and it never came to my mind—if someone does delay a response, then I will probably look into it further, if there's a communication problem. We were communicating appropriately, as far as I'm concerned."

The court also heard testimony from defendant's adult nephew that he had known defendant all his life, that they usually spoke Spanish together, and that defendant spoke

9

only limited English. After the court made its ruling, it heard defendant's testimony that he never spoke with Officer Elton and that "I told him I didn't understand English." However, the trial court is the determiner of witness credibility, and Officer Elton's testimony is substantial evidence to support a finding that a lack of English proficiency by defendant did not make his *Miranda* waiver unknowing or involuntary.

3. *Admissibility of Officer Testimony regarding Bill of Sale and Whether the Red Mazda was Stolen*

Given the People's concession, with which we agree, that the evidence does not support a finding that defendant committed auto burglary, we need not address this argument.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:

MILLER _____
J.

CODRINGTON _____
J.

10