Filed 12/18/13  P. v. Cruz CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OLMAN ROMERO CRUZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B243826<br>(Super. Ct. No. 2010021055, 2010035498,<br>2011045253, 2012002931)<br>(Ventura County) |

Olman Romero Cruz appeals from the judgment entered after his conviction by a jury of four counts of first degree residential burglary.  (Pen. Code, §§ 459, 460, subd. (a).)  The trial court sentenced him to prison for six years and imposed a consecutive term of eight months for probation violations.

Appellant contends that the trial court erroneously admitted evidence of prior convictions, that he was denied the effective assistance of counsel, and that in sentencing him the trial court erroneously ordered that he not contact the victims of the burglaries. Only the latter contention has merit.  We strike the no contact order and affirm in all other respects.

*Facts*

*Joshua Ogg Burglary*

Joshua Ogg lived in the Park Springs Condominium Complex (Park Springs) in Moorpark. Appellant lived in a different unit in Park Springs. Ogg had previously been friendly with appellant and had smoked marijuana with him.

Ogg's condominium had an attached garage in which he parked his car. In the morning on January 8, 2012, while Ogg was driving his car out of the garage, he noticed that an iPod was missing from the center console. He immediately suspected that appellant had taken it. Ogg confronted appellant and accused him of the theft. Appellant admitted that he had taken the iPod and said that "he'd get it back."

Later on, Ogg noticed that a silver bar was missing from his car. Appellant "admitted that he had actually pawned it off already" for $200. Appellant volunteered that he had removed a two-dollar bill from a wallet inside Ogg's car. Appellant handed the two-dollar bill to Ogg.

Appellant returned the iPod to Ogg, but did not return the silver bar. He paid Ogg $140 for the bar. Ogg bought it back from the pawn shop for $200.

*Other Burglaries*

Fabian Ceja also lived in Park Springs. In the morning on January 24, 2012, he noticed that an air compressor and stereo receiver were missing from his attached garage. The day before, both items had been inside the garage. Ceja saw the missing property in the bed of a truck that was parked in a space reserved for a specific Park Springs condominium. He contacted law enforcement, and deputy sheriffs responded to the location.

In the cab and bed of the truck, deputies found property that belonged to other persons living in Park Springs. Some of the property had been taken during the previous night from Debra Montano's car while it was parked inside her attached garage. Other property had been taken during the previous night from Renee Ramirez's attached garage. In the cab of the truck, deputies found pay stubs in appellant's name.

2

*Appellant's Statements*

Deputy James Tederer went to appellant's condominium and knocked on the front door. When appellant opened the door, Tederer told him that stolen property had been found inside his truck. Appellant "didn't seem surprised."

Deputy Kevin Lynch interviewed appellant. Appellant said that the truck "was his, but he was in the process of purchasing it" from Ryan Adams. Lynch ran a records check on the truck and found that it was registered in the name of Ryan Adams, who resided in Florida. Appellant stated that he had been in possession of the truck for the past three or four months. He did not say that he had allowed another person to use the truck.

Appellant denied knowing that the truck contained stolen property. He told Deputy Tederer that two of the stolen items belonged to friends with whom he had been "hanging out" the night before.

Appellant admitted taking an iPod and silver bar from Ogg's car. He said that he and Ogg had smoked marijuana together and that he had entered Ogg's garage to look for marijuana.

*Admission of Evidence of Prior Convictions*

Over appellant's objection, the trial court admitted evidence of three prior convictions. After the court's ruling, the parties stipulated in the jury's presence that in 2010 appellant had been convicted once of misdemeanor grand theft and twice of felony second degree commercial burglary. According to the stipulation, all of the convictions were based on appellant's theft of clothing from two Kohl's department stores. The jury was not informed of appellant's modus operandi in committing the thefts. The prosecutor told the court that each time appellant stole from the stores, he "removed the security sensors from the clothing with razors, [and] then made off with the clothes by donning them under his own clothes." The jury was instructed that it could consider the priors for the limited purpose of deciding whether appellant "acted with the intent to commit theft," whether he "knew of the stolen property in the truck," and whether he "had a plan or scheme to commit the offenses alleged in this case."

3

Appellant argues that the trial court erroneously refused to exclude the priors. "As a general rule, evidence of uncharged crimes is inadmissible to prove the defendant had the propensity or disposition to commit the charged crime. ([Evid. Code,] § 1101, subd. (a);[1] [citations].) . . . [¶] Evidence of other crimes is admissible, however, when relevant for a non-character purpose—that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake of fact or accident.' (§ 1101, subd. (b); [citations].)" (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.)

" 'Evidence of uncharged crimes is admissible to prove . . . common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of . . . common design or plan, or intent. [Citation.]' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.) " 'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] . . . In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' [Citations.]" [Citation.]' [Citation.] 'A greater degree of similarity is required in order to prove the existence of a common design or plan. . . . [E]vidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations." ' [Citation.]" (*Ibid*.) "If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent [or] common plan, . . . the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352.)' [Citation.]" (*Ibid*.)

---

[1] Unless otherwise stated, all further statutory references are to the Evidence Code.

4

"Where knowledge is an element of the crime charged [citation], prior similar offenses may be admitted to establish it. [Citations.]" (1 Witkin, Cal. Evid. (5th ed. 2012) Circumstantial Evidence, § 92, p. 483.) In *People v. Hendrix*, *supra*, 214 Cal.App.4th at p. 241, the court noted that it had found "no California case that discusses whether similarity is required to prove knowledge, and if so, what degree of similarity is required." (**Ibid**.) The court concluded that "[w]hether similarity is required to prove knowledge and the degree of similarity required depends on the specific knowledge at issue and whether the prior experience tends to prove the knowledge defendant is said to have had in mind at the time of the crime." (**Ibid**.)

" 'Rulings made under [sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Foster*, *supra*, 50 Cal.4th at pp. 1328-1329.)

The trial court did not abuse its discretion in admitting evidence of the prior convictions for the limited purpose of showing whether appellant intended to commit theft when he entered the victims' garages. "In order to constitute burglary, the defendant must intend to commit . . . theft or [any] felony at the time of entry. [Citation.]" (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540-541.) We recognize that there are differences between the charged and uncharged offenses. The department stores were open to the public and contained merchandise that was for sale. The garages were attached to private dwellings and were off-limits to the public. Appellant openly entered the stores during business hours, but surreptitiously entered the garages during the night. The modus operandi used to accomplish the theft of clothing from the stores (cutting off the security sensors and hiding the store clothing under appellant's own clothes) was obviously different from whatever modus operandi appellant used to accomplish the theft from the garages. Despite these differences, appellant's burglaries of the stores are " 'sufficiently similar [to the charged offenses] to support the inference that [he] " 'probably

5

harbor[ed] the same intent in each instance.' " ' " (*People v. Foster*, *supra*, 50 Cal.4th at p. 1328.)  It is important to keep in mind that " '[t]he least degree of similarity . . . is required in order to prove intent.' " (**Ibid**.)  It is reasonable to infer that, if appellant entered the stores with the intent to commit theft, he probably entered the garages with the same intent.  In both instances appellant entered structures and, once inside, removed property without the owner's consent.

Appellant maintains that evidence of the prior convictions was "merely cumulative on the issue of intent" because "the circumstances of the charged act[s] provided compelling evidence of an intent to commit a theft [that] could not reasonably be disputed."  Therefore, appellant argues that the trial court abused its discretion in concluding that the probative value of evidence of the prior convictions was not "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice."  (§ 352.)[2]

Appellant's argument lacks merit.  "By pleading not guilty, [appellant] placed all the elements of the [burglaries] in dispute at trial.  [Citation.]  On the issue of intent, [appellant did not offer to] stipulate that [whoever entered the garages intended to commit theft at the time of the entries].  Accordingly, [appellant's] intent . . . was a material fact."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.)

Defense counsel made clear to the jury that appellant's intent was a disputed issue as to the entry into Ogg's garage.  During cross-examination of Deputy Lynch, counsel indicated that his client did not intend to commit theft when he entered Ogg's garage.  Counsel inquired: "[Appellant] didn't go in to [Ogg's garage] to take anything; is that correct?  Originally when he went into that area, he didn't go in to steal the silver bar or anything else?"  Lynch responded: "[Appellant] didn't discuss that.  He said that he went in there for the purpose of looking for marijuana."  Counsel asked: "It was only after he was already in and looking around the car, that he saw these things that might have some

_____

[2] The trial court stated:  "And for the record, I don't think that [section] 352 mandates that we keep it [evidence of the prior convictions] out.  I don't see the prejudice is undue here or outweighs the probative value by any measure really."

6

value; is that correct?" Lynch replied: "He told me when [he] couldn't find marijuana, that he took the iPod and silver bar." The following colloquy occurred on recross-examination of Deputy Lynch: "[Counsel:] [Appellant] told you that he was a friend of Mr. Ogg's; is that correct? [¶] [Lynch:] Yes. [¶] . . . . . [¶] [Counsel:] And [appellant] told you that he had smoked marijuana in the past with Mr. Ogg; is that right? [¶] [Lynch:] Yes. [¶] [Counsel:] And based on that friendship, his expectation was that Mr. Ogg would not object [to appellant's entry into the garage to get marijuana]? . . . [¶] [Lynch:] "That was never said." Counsel's questions implied that appellant did not form the intent to steal until after he had entered Ogg's garage and could not find any marijuana.

During closing argument, defense counsel indicated that appellant's intent was a disputed issue as to the entry into Ogg's garage as well as the entries into the other garages. Counsel told the jury: "So [these] are the two issues you have to decide. Number one, did [appellant] enter Mr. Ogg's garage with the intent to steal something inside? [¶] And was it part of Mr. Ogg's residence or was it a garage?" Counsel said that, for each of the three other burglaries, the jury also had to decide whether appellant entered the garage "with the intent to steal."

Other factors support the trial court's reasonable exercise of its discretion under section 352. The prior convictions occurred in 2010 and were therefore not remote in time. "The [stipulation] describing [appellant's] uncharged acts . . . was . . . no more inflammatory than the testimony concerning the charged offenses. This circumstance decreased the potential for prejudice, because it was unlikely that the jury disbelieved [the] testimony regarding the charged offenses but nevertheless convicted defendant [based on the stipulation that he had committed the uncharged offenses], or that the jury's passions were inflamed by the evidence of defendant's uncharged offenses." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.)

Moreover, "the prejudicial effect of [the prior convictions] is [lessened] by the circumstance that defendant's uncharged acts [resulted] in criminal convictions. This circumstance [decreased] the danger that the jury might have been inclined to punish

7

defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses . . . ." (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.)

Finally, "the trial court's instructions to the jury under [CALCRIM No. 375] regarding evidence admitted for a limited purpose, and . . . advising it to consider such evidence not to prove [appellant's bad character or] predisposition to commit crimes but rather to determine whether the necessary element of intent . . . was proven, eliminated any danger 'of confusing the issues, or of misleading the jury.' (Evid.Code, § 352.) We presume the jury followed these instructions. [Citation.]" (*People v. Lindberg*, *supra*, 45 Cal.4th at pp. 25-26.)

"As noted above, the trial court instructed the jury that the evidence of [appellant's] prior crimes also could be considered with respect to the issue[s] of [whether he 'knew of the stolen property in the truck' and whether he 'had a plan or scheme to commit the offenses alleged in this case.'] We need not decide whether the prior crimes were sufficiently similar to the charged offenses to be relevant to [these issues], because any error in the court's instruction was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 . . . ['a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'].) . . . [T]he evidence was *admissible* [on the issue of intent], regardless of whether it was relevant to the [other issues]. Thus, the jury would have heard this evidence even if the trial court had not admitted it to establish [appellant's knowledge or plan or scheme]." (*People v. Foster*, *supra*, 50 Cal.4th at pp. 1332-1333, fn. omitted.)

We reject appellant's contention that the admission of evidence of the prior convictions violated his federal constitutional right to a fair trial. " 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 949.) Evidence of the prior convictions was not unduly prejudicial.

Furthermore, "the routine application of provisions of the state Evidence Code law does not implicate a criminal defendant's constitutional rights. [Citation.]" (*Id*., at p. 957.)

*Effective Assistance of Counsel*

Appellant argues that he was denied the effective assistance of counsel because counsel "failed" to move for a new trial. Based on the trial court's comments during a hearing on a probation violation, appellant contends that reasonably competent counsel would have realized that " 'the chances' that the trial court would have granted a new trial . . . were extremely high."

The probation violation hearing occurred after closing argument and before the jury began its deliberations. The trial court determined that the People had met their burden of showing by a preponderance of the evidence that appellant had committed the charged burglaries. (See *People v. Kelly* (2007) 154 Cal.App.4th 961, 965 ["The standard of proof required for revocation of probation is a preponderance of evidence to support the violation"].) The court said that proof of the Ogg burglary "is dramatically better and dramatically more persuasive." As to the other three burglaries, the court remarked: "My personal opinion is *it's probably not reasonable doubt*. I think reasonable people can differ and they might, I don't know, but in my view, we get to preponderance anyway, and that's enough for violation of probation." (Italics added.)

Appellant argues that these statements show that the trial court believed that there was a reasonable doubt as to the other three burglaries, appellant maintains that the trial court probably would have granted a motion for new trial as to these burglaries on the ground that the verdict was contrary to the evidence. (Pen. Code, § 1181, subd. 6.) Assuming, without deciding, that appellant reads the record correctly we are not persuaded.

`When a motion for new trial is made on this ground, the court "independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge,* who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a

9

reasonable doubt, it may rule that the jury's verdict is 'contrary to the . . . evidence.' [Citations.]" (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.)

"The burden of proving ineffective assistance of counsel is on the defendant. [Citation.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 707.)  "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674].)  In determining whether counsel was deficient, we measure counsel's performance "against the standard of a reasonably competent attorney." (*People v. Kipp* (1998) 18 Cal.4th 349, 366.)  "A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' [Citations.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694.)

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." ( *Strickland v. Washington, supra,* 466 U.S. at p. 697.)

We need not determine whether counsel was deficient in not moving for a new trial.  Appellant has failed to "show that there is a reasonable probability that, but for counsel's [allegedly] unprofessional error[], the result of the proceeding would have been different." (*Strickland v. Washington, supra,* 466 U.S. at p. 694.)  It is speculative whether the court would have granted a new trial on the burglary charges not involving Ogg.  The court made its remarks about reasonable doubt in an offhand manner before the jury began its deliberations.  The court said that "it's probably not reasonable doubt." The use of the word "probably" conveys uncertainty.  The court never considered whether the evidence was contrary to the verdict because there was no verdict.  In

10

determining whether to grant a motion for a new trial on this ground, the court is "guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. [Citation.] The trial court 'should [not] disregard the verdict . . . but instead . . . should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 524.)

If appellant had moved for a new trial, the court probably would have decided that there was sufficient credible evidence to support the guilty verdicts as to the three burglaries not involving Ogg. The morning after the burglaries, the stolen property was found in appellant's truck. Both the victims and appellant lived in the same condominium complex. The property was taken from the victims' garages. A few weeks earlier, appellant had taken property from Ogg's garage. Ogg also lived in the condominium complex. It is reasonable to infer that appellant acted pursuant to a plan to burglarize garages in the condominium complex in which he resided.

*No Contact Order*

The trial court sentenced appellant to state prison and ordered that he not contact the victims. Appellant contends, and the People concede, that this order was erroneous and should be stricken from the judgment. Based on our decision in *People v. Ponce* (2009) 173 Cal.App.4th 378, we accept the concession.

*Abstract of Judgment: Clerical Error*

The abstract of judgment shows that, for the fourth count of first degree residential burglary, appellant was sentenced to a consecutive term of one year, one month. The one month figure is followed by six very small zeroes. The trial court imposed a consecutive term of one year, four months.

*Disposition*

The order requiring that appellant have no contact with the victims is stricken from the judgment. In all other respects, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to omit this order and to show a consecutive term of one year, four months for the fourth count of first degree residential burglary.

11

The trial court shall transmit a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

David Hirsch, Judge

Superior Court County of Los Angeles

_____

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. , Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.