Filed 1/23/14  P. v. Hernandez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAUL HERNANDEZ,<br><br>    Defendant and Appellant. | H039090<br>(Santa Clara County<br>Super. Ct. No. C1233989) |

## I.    INTRODUCTION

Defendant Raul Hernandez appeals after a jury convicted him of attempted first degree burglary (count 1; Pen. Code, §§ 459, 460, subd. (a), 664[1]), with a true finding on the allegation that the attempted burglary was a violent felony under section 667.5, subdivision (c)(21) because a person other than an accomplice was present in the residence during its commission, and possession of burglary tools (count 2; § 466), Defendant was sentenced to a three-year prison term, which included a concurrent term for count 2.

On appeal, defendant contends:  (1) trial counsel was ineffective for failing to object to evidence that the victim believed defendant could hear him during a 9-1-1 call; (2) the trial court erred by instructing the jury that it could use evidence of defendant's

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

flight to show his consciousness of guilt, pursuant to CALCRIM No. 372; (3) the term for possession of burglary tools (count 2) should have been stayed pursuant to section 654; and (4) the section 667.5, subdivision (c)(21) allegation must be stricken as it does not apply to attempted burglary.

We agree that the term for possession of burglary tools (count 2) should have been stayed pursuant to section 654 and that the attempted burglary was not a violent felony under section 667.5, subdivision (c)(21). We will reverse the judgment and remand for resentencing.

## II. BACKGROUND

### A. *The Attempted Burglary*

On Monday, June 4, 2012, Eric Wardell was working from his home on Porter Lane in San Jose. He was in the master bedroom, which was above the front door, when he heard the doorbell ring. He looked down from the window, which was partially open. He saw two men at the front door. Both men were wearing black pants and black hooded sweatshirts with the hoods pulled up.

The men were repeatedly ringing Wardell's doorbell and knocking on the door. Wardell did not know them, and he was not expecting any visitors. After about three to five minutes, he called 9-1-1.

Wardell told the 9-1-1 dispatcher that he thought someone was trying to break into his house. He explained that the men kept ringing the doorbell and that they were "listening very closely against the door." He described their "all dark clothing." Wardell then told the dispatcher that the men were also "knocking on the door now." The dispatcher assured Wardell that deputies were on the way and asked Wardell to remain on the phone.

Wardell then saw one of the men pull out a screwdriver and attempt to "jimmy" the door lock. Speaking more quickly, he told the dispatcher, "they're trying to break the

2

door, they're trying to break the door" and "they're breaking the door." The dispatcher instructed Wardell to lock himself in a room in the house, and Wardell complied by locking his bedroom door.

Wardell saw the men look up while he was talking to the dispatcher. He then watched them walk down the street and head north, and he told the dispatcher he thought the men had left. He stated, "They walked away. I think they heard me on the phone."

Wardell testified that there was a "slight indentation" in the door after the incident. When he first spoke to a sheriff's deputy, he had been unsure whether there was any damage to the door. Wardell could not identify defendant at trial.

### B. Defendant's Arrest

Deputy Sheriff Richard Rodriguez responded to the area of Wardell's residence. Just around the corner from Wardell's house, on Piazza Way, he saw two individuals matching the reported description: both were wearing black hooded sweatshirts and black pants. He stopped them and, along with another deputy, detained them. Defendant was one of the two individuals.

Deputy Rodriguez found a screwdriver in the front yard of a residence, about 10 feet from where he had detained defendant. He administered the *Miranda*[2] warnings to defendant, who admitted he had been knocking on Wardell's door. Defendant claimed he had been looking for a friend who owed him $40. Defendant was "unsure on what street or what house [the friend] lived at, but he knew it was a two-story house." Defendant denied he or his companion had possessed a screwdriver.

### C. Verdicts and Sentencing

The jury found defendant guilty of attempted first degree burglary (count 1; §§ 459, 460, subd. (a), 664) and possession of burglary tools (count 2; § 466), and it

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

found true the allegation that a person other than an accomplice was present in the residence during the commission of the attempted burglary (§ 667.5, subd. (c)(21)).

At sentencing, the trial court denied probation. The trial court imposed the upper term of three years for attempted burglary (count 1) and a concurrent six-month term for possession of burglary tools (count 2).

## III.    DISCUSSION

### A.    *Ineffective Assistance of Counsel*

Defendant contends trial counsel was ineffective for failing to object to evidence that Wardell believed defendant heard him talking to the 9-1-1 dispatcher. He contends effective counsel would have sought to redact the portion of the 9-1-1 call in which Wardell stated, "I think they heard me on the phone" and would have objected to similar evidence that was admitted through the testimony of Deputy Rodriguez.

#### 1.    **Proceedings Below**

During motions in limine, the prosecution sought to introduce the transcript and recording of the 9-1-1 call based on Evidence Code sections 1240 (spontaneous statement) and 1241 (contemporaneous statement). During a hearing on that motion, defendant indicated his only concern was having the opportunity to cross-examine Wardell. He indicated that since Wardell would be testifying, that would not be an issue. The trial court granted the prosecution's motion to introduce the 9-1-1 call.

As noted above, during the 9-1-1 call, Wardell told the dispatcher, "I think they heard me on the phone." Trial counsel did not seek to redact that statement from the recording or transcript, and he did not object when the 9-1-1 call was introduced into evidence at trial.

Trial counsel did object when Wardell testified, "I think they heard my voice coming from the second floor." Trial counsel argued that Wardell's testimony was

4

speculative.  The trial court sustained the objection and instructed the jury to disregard the statement.

Trial counsel did not object when Deputy Rodriguez subsequently referred to Wardell's belief that defendant could hear him on the phone.  Deputy Rodriguez testified: "[Wardell] did not want to be involved with the investigation.  He was in fear of retaliation, because he's the one who called 9-1-1, and he thought they had heard him talking on the phone from his room."

### 2.    Analysis

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  [Citations.]  Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms.  [Citation.]  Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93 (*Benavides*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.)

Defendant contends that Wardell's statement "I think they heard me on the phone" was speculative and thus inadmissible under Evidence Code section 702.[3]  He points out that the trial court sustained his objection to Wardell's trial testimony on that basis.  He asserts that effective trial counsel would have raised the same objection with respect to the 9-1-1 call and Deputy Rodriguez's testimony.

---

[3] Evidence Code section 702, subdivision (a) provides in pertinent part:  "[T]he testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. . . ."

5

The Attorney General contends that under Evidence Code section 800,[4] Wardell's belief that defendant and his companion heard him on the phone with the 9-1-1 dispatcher was permissible lay witness opinion evidence, and thus that an objection would not have been meritorious.

Under Evidence Code section 800, "[a] lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind. [Citation.]" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130-131 (*DeHoyos*).) "Such a situation may arise when a witness's impression of what he or she observes regarding the appearance and demeanor of another rests on 'subtle or complex interactions' between them [citation] or when it is impossible to otherwise adequately convey to the jury the witness's concrete observations. [Citations.]" (*Id.* at p. 130; see *People v. Medina* (1990) 51 Cal.3d 870, 887 [witness could give his opinion that the defendant understood what the witness was saying].)

Here, it is a close question whether Wardell's statements would have been admissible under Evidence Code sections 702 and 800. At least arguably, it was not "impossible to otherwise adequately convey" the objective facts that Wardell had observed about defendant and his companion. (*DeHoyos, supra,* 57 Cal.4th at p. 130.) However, even assuming that effective counsel would have successfully objected to all of the evidence concerning Wardell's belief that defendant heard him talking on the phone, there is no "reasonable probability that . . . the result of the proceeding would have been different." (*Benavides, supra,* 35 Cal.4th at p. 93.)

---

[4] Evidence Code section 800 provides: "If a witness is not testifying as an expert, his [or her] testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his [or her] testimony."

6

First, considering Wardell's admissible testimony, the jury likely would have reached the exact same conclusion:  that defendant had heard Wardell talking on the phone.  Wardell testified that defendant and his companion had been knocking on the door and listening at the door.  He testified that he was talking to the 9-1-1 dispatcher from a bedroom right above the front door, and that the window was partially open.  He testified that he saw the two men look up while he was talking to the dispatcher about the men trying to break in, and that the men subsequently left.  Based on this testimony, a reasonable juror would have concluded that defendant and his companion heard Wardell talking to the 9-1-1 dispatcher.

Further, even without Wardell's statement, the evidence of defendant's guilt was very strong.  Since defendant and his companion had been knocking on the door and listening at the door, it was clear that they were concerned about the presence of someone in the house.  They left the Wardell residence right after Wardell began telling the dispatcher that the two men were "breaking the door" and after Wardell – who was in a bedroom right above the front door, with a partially open window – saw the men look up.  Defendant was detained soon afterwards, very close to Wardell's residence, with a screwdriver found just 10 feet away.  Defendant admitted he had been knocking on Wardell's door.  His story about trying to find a friend was not credible, since he admitted not knowing where his friend lived.  Considering these facts, even if the jury had not heard Wardell's stated belief that defendant heard him talking on the phone, there is no reasonable probability that it would not have convicted defendant of attempted burglary or possession of burglary tools.

### B.      Flight Instruction

Defendant contends the trial court erred by instructing the jury that it could use evidence of his flight to show a consciousness of guilt, pursuant to CALCRIM No. 372.

### 1.    Proceedings Below

Defendant objected to the flight instruction below.  He argued there was no evidence that he had fled, noting that Wardell had testified that the two men had not walked hurriedly away nor looked back at the house.  Defendant further noted that he had not fled when approached by Deputy Rodriguez.

The prosecutor argued that it was a reasonable inference that defendant had left Wardell's residence after hearing Wardell speak in an urgent voice to the 9-1-1 dispatcher.  The trial court found the issue was "a question of fact for the jury" and ruled that the flight instruction would be given.

During argument to the jury, the prosecutor asserted that defendant had stopped trying to enter Wardell's house either because of the "interrupt[ion]" by Wardell or because of his "lack of success."  He argued that defendant had walked away either because he knew the police were coming or because he was "going somewhere else." Defendant argued that he had not fled.

Pursuant to CALCRIM No. 372, the trial court instructed the jury:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."

### 2.    Analysis

"Penal Code section 1127c requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243.)  An instruction on flight is appropriate if there is substantial evidence the defendant departed the crime scene under circumstances suggesting the movement was motivated by a consciousness of guilt. (*People v. Howard* (2008) 42 Cal.4th 1000, 1020.)  The law does not require the physical act of running, only a

8

purpose to avoid being detained. (*People v. Abilez* (2007) 41 Cal.4th 472, 522.) "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328 (*Bonilla*).)

Defendant claims the "circumstances of departure" in his case "do not indicate consciousness of guilt in any way." We disagree. As the prosecutor argued, the evidence was susceptible of two reasonable inferences: that defendant and his companion left because they heard Wardell talking on the phone and wanted "to avoid being observed or arrested" (see *People v. Crandell* (1988) 46 Cal.3d 833, 869, abrogated on other grounds by *People v. Crayton* (2002) 28 Cal.4th 346, 364-365), or that defendant and his companion left because they were unsuccessful in gaining entry. As the trial court found, it was the jury's function to determine which of these two inferences to draw. Thus, the flight instruction was properly given. (See *Bonilla, supra,* 41 Cal.4th at p. 329 [flight instruction proper where the jury "could attribute an innocent explanation" to the defendant's conduct "but it could also infer that his departure and the circumstances thereof were consistent with and supported the prosecution's theory"].)

## C.    Section 654

Defendant contends the term for possession of burglary tools (count 2) should have been stayed pursuant to section 654 because it was committed as part of the same course of conduct, and with the same objective, as the attempted burglary (count 1).

### 1.    Legal Principles

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." The purpose

9

of the statute is to ensure that the punishment is commensurate with the defendant's culpability.  (*People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*).)

"The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654.  The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.  [Citations.]" (*People v. Bauer* (1969) 1 Cal.3d 368, 376.)  "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he [or she] may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Perez, supra,* 23 Cal.3d at p. 551, fn. omitted.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)  On appeal we defer to express or implicit determinations that are based upon substantial evidence.  (Cf. *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

### 2. Analysis

In the context of firearms, courts have held that if the evidence demonstrates only that "fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense," section 654 bars separate punishment for illegal possession of a firearm.  (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412; see *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [section 654 prohibited punishment for both assault and being a felon in possession of a firearm where there was no evidence that the defendant had possessed the gun before the shooting took place].)  However, "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his

10

or her primary crime already in possession of the firearm." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1145.)

Unlike possession of a firearm by a convicted felon, possession of a screwdriver is not illegal absent the contemporaneous intent to use the screwdriver to commit a burglary. (*People v. Kelly* (2007) 154 Cal.App.4th 961, 968 [section 466 applies to tools "that the evidence shows are possessed with the intent to be used for burglary"]; *People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085.) Thus, defendant's antecedent possession of the screwdriver is not the sole criterion for determining whether section 654 applies in this case. Rather, we must determine whether the evidence supported a finding that defendant possessed the screwdriver for the sole purpose of burglarizing Wardell's home, in which case he had only one intent and objective and section 654 would prohibit multiple punishment, or a finding that defendant possessed the screwdriver with the intent to burglarize other homes, in which case section 654 would not apply.

The evidence here shows that defendant possessed the screwdriver with the intent to use it to commit the instant attempted burglary. There is no evidence that he had used the screwdriver to commit or attempt any prior burglaries or that he intended to commit future burglaries with the screwdriver. Thus, the evidence shows that defendant's possession of the screwdriver was incidental to his commission of the attempted burglary in this case. Without substantial evidence that defendant harbored multiple criminal objectives in possessing the screwdriver, multiple punishment is prohibited by section 654. (See *Perez, supra,* 23 Cal.3d at p. 551.)

### D. *Violent Felony Allegation*

Defendant contends the section 667.5, subdivision (c)(21) allegation must be stricken because it does not apply to attempted burglary. The Attorney General concedes that section 667.5, subdivision (c)(21) does not apply to attempted burglary. We find the concession appropriate.

11

Section 667.5, subdivision (c) lists offenses that are " 'violent felon[ies].' " Subdivision (c)(21) provides that one such violent felony is "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." Section 667.5, subdivision (c) does not specify that *attempts* to commit the enumerated crimes are also violent felonies. (Compare § 1192.7, subd. (c)(39) [" 'serious felony' " includes "any attempt to commit a crime listed in this subdivision other than an assault"]; see *People v. Ibarra* (1982) 134 Cal.App.3d 413, 425 ["Section 667.5, subdivision (a), does not apply to attempts to commit the crimes referred to as violent felonies."].)

In denying probation, the trial court found that defendant was "statutorily ineligible," apparently due to the section 667.5, subdivision (c) allegation. Since attempted burglary is not one of the enumerated crimes in section 667.5, subdivision (c), defendant was not in fact statutorily ineligible for probation. Although the trial court also specified that it was denying probation based on the fact defendant had failed when previously placed on probation,[5] we believe it is appropriate to remand the matter for resentencing so the court may reconsider whether to grant probation.

## IV.    DISPOSITION

The judgment is reversed. The trial court is directed to vacate the true finding on the allegation that the attempted burglary (count 1; §§ 459, 460, subd. (a), 664) was a violent felony pursuant to section 667.5, subdivision (c)(21). The trial court shall

---

[5] The trial court held proceedings in case No. C1101364 concurrently with the trial in this case, finding defendant in violation of his probation in that matter.

resentence defendant. If probation is denied, the trial court is directed to stay the sentence for possession of burglary tools (count 2; § 466) pursuant to section 654.


_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____
MÁRQUEZ, J.


_____
GROVER, J.


13