[No. A115715. First Dist., Div. Three. Aug. 29, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
TRACY KELLY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Catherine A. McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIGGINS, J.**—When are a box cutter and a slingshot "instrument[s] or tool[s]" within the meaning of Penal Code section 466,[1] which criminalizes the possession of burglary tools? The answer in this case is: certainly when they are in the possession of a convicted burglar and thief who intends to use them as such. Defendant Tracy Kelly appeals an order revoking his probation and sentencing him to a suspended three-year upper prison term conditioned on a one-year term in county jail. Defendant contends the evidence was insufficient to revoke his probation due to his possession of burglary tools and that his sentence violates *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. We affirm.

## BACKGROUND

### *Defendant's Criminal History and His 2004 Conviction*

Defendant is no stranger to the criminal justice system and has a record of theft-related convictions that span back to 1991, including a 1997 conviction for possession of burglary tools and a 2001 conviction for burglary. On April 1, 2004, defendant was charged with auto burglary, petty theft with a prior, possession of stolen property, and possession of a spark plug chip. The complaint alleged a prior felony conviction and prison term within the meaning of section 667.5, subdivision (b). Defendant pled guilty to possession of stolen property in exchange for the dismissal of the remaining counts. Pursuant to the plea agreement, the court suspended imposition of the sentence, placed defendant on three years' probation, and dismissed the remaining counts.

### *Defendant's 2006 Probation Revocation*

In September 2006, San Francisco Police Inspector Mark Gamble responded to a report of an automobile burglary in progress. When he arrived at the scene he saw a white van with a shattered rear passenger window. The police dispatcher described the suspect as a Black male adult wearing a gray sweatshirt, blue jeans and tennis shoes, carrying two backpacks. About 10 minutes after the initial radio call the dispatcher reported that the suspect had

---

[1] All further statutory references are to the Penal Code.

changed from the gray sweatshirt and was now wearing a blue jersey-type shirt. Inspector Gamble spotted defendant, who is African-American, carrying a backpack and wearing blue jeans and a blue and white jersey.

Gamble also saw defendant look in the direction of Gamble's marked police car and quickly look away. He made a sharp right turn and walked in the opposite direction. The inspector and another officer stopped defendant as he was walking away.

Inspector Gamble saw that defendant had a black object in each hand and ordered defendant to place his hands on the police car. The objects were cell phones. Defendant put them down and said "I found that wallet. You can ask those old people; I was showing it to them." Then defendant added, "I saw that van with the broken window, that's messed up." Both of defendant's statements were spontaneous, and Gamble had not yet asked defendant any questions.

The backpack defendant was carrying contained a gray sweatshirt, numerous compact discs, a wallet and a laptop computer. Near where defendant was apprehended, Inspector Gamble found a second backpack inside a garbage can a block away from the van with the broken window. Two women woman approached as Gamble retrieved the backpack. One of them, later identified as Nicki Dean, said "That's my backpack, oh my God." A search of the backpack carried by defendant produced a wallet containing the New York driver's license belonging to the second woman, Vera Sosnowski.

The backpack carried by defendant also contained a box cutter, a slingshot, and a flashlight. Inspector Gamble concluded that these instruments were burglary tools, due to his experience as an investigator working on auto burglaries. A slingshot is commonly used with a ceramic chip to break automobile windows; this device "will crack the glass usually on the first hit." Box cutters are used to cut the wires on car stereos. Flashlights are used to see inside dark car interiors.

Dean and Sosnowski accompanied Inspector Gamble to the police station. Gamble released the wallet and cell phone to Sosnowski and released the second backpack and its contents, the laptop, cloth holder with compact discs and computer charger to Nicki Dean.

The People moved to revoke defendant's probation based on allegations that he violated probation by committing automobile burglary, being in possession of stolen property and being in possession of burglary tools. The trial court excluded as hearsay Gamble's testimony that Nicki Dean and Sosnowski identified the items as their property, and Nicki's mother Barbara

Dean told him she had rented the white van. After a contested evidentiary hearing the court concluded the nonhearsay evidence was insufficient to establish that defendant committed burglary and was in possession of the victims' property because neither of the women testified. But the court determined that defendant violated his probation because he was in possession of burglary tools.

## DISCUSSION

### I. *Possession of Burglary Tools*

Defendant contends there is insufficient evidence to sustain the probation violation for possession of burglary tools. He maintains a flashlight, a box cutter knife, and a slingshot do not qualify as burglary tools as defined in section 466. He also contends there was no competent evidence that he had the requisite intent to break or enter.

### *Standard of Review*

The standard of proof required for revocation of probation is a preponderance of evidence to support the violation. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066 [132 Cal.Rptr.2d 665].) Trial courts are granted great discretion in deciding whether or not to revoke probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445 [272 Cal.Rptr. 613, 795 P.2d 783].) "Absent abuse of that discretion, an appellate court will not disturb the trial court's findings." (*People v. Self* (1991) 233 Cal.App.3d 414, 417 [284 Cal.Rptr. 458].)

### *Section 466*

Section 466 makes possession of burglary tools a misdemeanor. In relevant part, it provides: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any . . . vehicle . . . is guilty of a misdemeanor."

Since section 466 does not specifically enumerate box cutters, flashlights or slingshots as burglary tools, the question for us is whether any of these objects qualifies as an "other instrument or tool" when possessed with intent to feloniously break or enter.

Defendant's argument that the items found in his possession are not the sort of instruments or tools proscribed by section 466 is based upon *People v. Gordon* (2001) 90 Cal.App.4th 1409 [109 Cal.Rptr.2d 725]. In *Gordon*, the defendant possessed porcelain chips from a spark plug and was convicted of violating section 466. A police detective testified that thieves use pieces of ceramic spark plugs to throw at car windows and shatter them because they make very little sound. (*Gordon, supra,* at p. 1411.) So, the defendant was convicted of violating section 466 because, although not specified in the statute, spark plug chips were determined to be other instruments or tools of burglary.

The Court of Appeal reversed. It employed the doctrine of *ejusdem generis* to hold that spark plug chips do not come within the meaning of "other instrument or tool" as used in section 466. The court stated: "In making this determination we are guided by the rule of construction known as *ejusdem generis*—which applies when general terms follow a list of specific items or categories, or vice versa. [Citation.] Under this rule, application of the general term is ' "restricted to those things that are similar to those which are enumerated specifically." ' [Citations.] Moreover, '[i]n construing criminal statutes, the *ejusdem generis* rule of construction is applied with stringency. [Citation.]' [Citation.] Thus, the meaning of the words 'or other instrument or tool' in section 466 is restricted to a form of device similar to those expressly set forth in the statute. [Citation.] [¶] The items specifically listed as burglar's tools in section 466 are keys or key replacements, or tools that can be used to pry open doors, pick locks, or pull locks up or out. None of the devices enumerated are those whose function would be to break or cut glass—e.g., rocks, bricks, hammers or glass cutters, and none of the devices listed resembles ceramic spark plug pieces that can be thrown at a car window to break it. . . . Here, a ceramic piece of a spark plug that can be thrown at a car window is not similar to the burglar's tools listed in the statute." (*Gordon, supra,* 90 Cal.App.4th at pp. 1412–1413.)

We are not persuaded that *Gordon* controls the outcome in this case. First, while it is at least arguably questionable to classify ceramic chips as "tools" or "instruments" as those terms are commonly understood, we have no such difficulty placing a slingshot or a box cutter within that category. Second, we note the Legislature disagreed with the decision in *Gordon* and amended section 466 the following year to specifically include "ceramic or porcelain spark plug chips or pieces" among the enumerated burglary tools.[2] (Stats. 2002, ch. 335, § 1.) The legislative response to *Gordon* undermines its

---

[2] In enacting the amendment the Legislature stated that its intent was "to add only ceramic or porcelain spark plug chips or pieces, not other common objects such as rocks or pieces of metal that can be used to break windows, to the list of burglary tools in Section 466 of the Penal Code." (Stats. 2002, ch. 335, § 2.)

conclusion that section 466 was intended to encompass only items that can be used to unlock, pry, or pull something open.

■ We also believe *Gordon*'s analysis is problematic. We interpret statutes to ascertain and effectuate the Legislature's overriding purpose. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) To that end we look first to the words of the statute, giving the statutory language its plain and ordinary meaning and construing it in context; only where a statute is ambiguous may we look beyond the Legislature's language to ascertain its intent. (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176]; *In re Marquez* (2003) 30 Cal.4th 14, 19–21 [131 Cal.Rptr.2d 911, 65 P.3d 403].) When we must resort to rules of statutory construction such as *ejusdem generis* to clarify ambiguous language, we do so to effectuate the Legislature's intent, not to defeat it. (*People v. Silver* (1940) 16 Cal.2d 714, 721 [108 P.2d 4].)

■ In *Gordon,* the court seems to have applied the *ejusdem generis* rule without identifying any ambiguity in section 466. We do not consider the language proscribing possession of "any instrument or tool" with the specified felonious intent to be inherently ambiguous. But assuming that it is, *Gordon* thwarts, rather than effectuates, the plain legislative purpose to deter and prevent burglaries. (See *People v. Lee* (1968) 260 Cal.App.2d 836, 840–841 [67 Cal.Rptr. 709] [under statute making it illegal to be in a "room or place" where narcotics are being used, the term "place" construed to include a car to avoid defeating the legislative purpose of combating traffic in narcotics].) " 'It is to be remembered that "the doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the Legislature, and may be used to carry out, but not to defeat the legislative intent." ' [Citation.] The 'major consideration in interpreting a criminal statute is the legislative purpose,' and the court 'will usually inquire into the evils which prompted its enactment and the method of elimination or control which the Legislature chose.' " (260 Cal.App.2d at p. 841)

■ Under *Gordon*'s interpretation, section 466 authorizes law enforcement to apprehend only burglars and would-be burglars who employ a limited set of means to achieve their nefarious ends, while malfeasants who use other means to break and enter are immunized from punishment even where the evidence establishes their intent to use the tool or instrument in their possession to commit burglary. We see nothing in the statute that indicates this is what the Legislature intended. To the contrary, we think the plain import of "other instrument or tool," and the only meaning that effectuates

the obvious legislative purpose of section 466 includes tools that the evidence shows are possessed with the intent to be used for burglary.[3]

■ Here, Inspector Gamble opined that the slingshot was a burglary tool and testified that slingshots are used by burglars to break into vehicles by propelling porcelain chips at vehicle windows. He further testified that burglars use box cutters to cut the wires of car stereos. This is sufficient evidence to conclude that the slingshot and box cutters were instruments or tools within the scope of section 466.[4]

We are also satisfied that there was adequate evidence of defendant's intent to burglarize. Gamble testified that defendant matched the description of the person seen breaking into the victims' van and was apprehended in the near vicinity shortly after the break-in. Upon seeing police, defendant took evasive action. When he was stopped, he blurted out, "I found that wallet. You can ask those old people; I was showing it to them" and "I saw that van with the broken window, that's messed up." In addition, a wallet containing Vera Sosnowski's identification was found in defendant's possession, and a second backpack was found in a garbage can near where defendant was first seen, consistent with police reports that defendant was initially observed carrying two backpacks. This evidence, taken as a whole, sufficiently established that defendant possessed the burglary tools with the requisite felonious intent. It is not necessary to consider Inspector Gamble's hearsay testimony to sustain this finding. On this record, we have no difficulty concluding defendant possessed burglary tools and intended to use them. Defendant's revocation of probation is affirmed.

## II.  *Sentencing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] Of course, there may well be debate, and gray areas, over whether a particular object qualifies as an "instrument or tool." For example, in amending section 466 to add ceramic chips to the enumerated items, the Legislature expressly clarified its intent not to include rocks or pieces of metal. Had it not done so, we can certainly envision heated debate over whether such everyday items are burglary tools or instruments within the provision's meaning. We perceive less room to quibble over whether a box cutter or slingshot, which the testimony established is commonly used with ceramic chips to break into vehicles, is an "instrument or tool."

[4] We express no opinion on whether possession of a flashlight alone may satisfy section 466, as that situation is not before us.

*See footnote, *ante*, page 961.

## DISPOSITION

The order is affirmed.

McGuiness, P. J., and Horner, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied November 28, 2007, S156622.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.