[No. G044411. Fourth Dist., Div. Three. June 28, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCELINA DIAZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IIB.

COUNSEL

Cathy A. Neff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ARONSON, Acting P. J.**—A jury convicted defendant Marcelina Diaz of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a); all statutory citations are to the Penal Code unless noted), false representation to a police officer (§ 148.9), and misdemeanor possession of burglary tools (§ 466). The jury also found a person other than an accomplice was present at the time of the burglary. (§ 667.5, subd. (c)(21).) Diaz challenges the sufficiency of the evidence to support her conviction for possession of burglary tools. She argues latex gloves and a large purse or bag do not fall within section 466's burglary tool prohibition. She also disputes the validity

of her residential burglary conviction because the trial court failed to define theft for the jury. In the published portion of this opinion, we conclude gloves and a bag do not constitute burglary tools where no evidence suggests they were possessed to break into or gain access to a victim's property, and they do not resemble items the Legislature has specified are burglary tools in section 466. We therefore reverse Diaz's conviction for possession of burglary tools.

I

FACTUAL AND PROCEDURAL HISTORY

On the afternoon of June 29, 2009, 82-year-old Frances Painter became disturbed and fearful as she sat in the den of her Buena Park home when Diaz, a stranger, would not retreat from her doorstep, but instead repeatedly rang her doorbell. Diaz pressed the buzzer at least 10 times in what "seemed like an eternity" to Painter, who generally did not answer the door if she did not recognize the person through the window. Diaz eventually walked away, but soon returned and when Painter again did not respond to the door buzzer, Diaz turned past the den window and climbed over a wall into Painter's backyard. Painter telephoned 911. Diaz pried open a locked screen door, but found further entry blocked by a locked sliding glass door. Undeterred, she walked around the house and tried the kitchen door before the police arrived and intercepted her.

Diaz twice provided arresting officers with false information concerning her name and date of birth. The officers found a large black bag in the backyard containing blue latex gloves. An officer testified based on his training and experience these were "burglary tools." The "empty bag means you fill it up with stuff . . . ." A burglar would use the gloves "to conceal . . . the person's identity by the fingerprints." The officer explained thieves commit daytime residential burglaries because the resident is usually away.

At the police station after her arrest, the officers obtained Diaz's fingerprints and discovered her true name. Diaz claimed she lied because she had been scared. She admitted the bag belonged to her.

Following a trial in October 2010, a jury convicted Diaz as noted above. The trial court imposed and suspended execution of a six-year eight-month prison sentence and placed Diaz on probation with terms that included a one-year jail sentence.

II

DISCUSSION

A. *Substantial Evidence Does Not Support the Burglary Tools Conviction*

Diaz contends there is insufficient evidence to sustain her burglary tools conviction. She argues the Legislature's definition of burglary tools in section 466 does not include a bag containing latex gloves. We agree.

Section 466 provides in relevant part: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, *or other instrument or tool* with intent feloniously to break or enter into any building . . . or vehicle . . . is guilty of a misdemeanor." (Italics added.) "[I]n order to sustain a conviction for possession of burglary tools in violation of section 466, the prosecution must establish three elements: (1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering." (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084–1085 [62 Cal.Rptr.3d 48].)

"When reviewing the sufficiency of evidence to support a criminal conviction, we ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] We view the whole record in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence. [Citations.] 'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [75 Cal.Rptr.2d 40].)

Diaz relies on *People v. Gordon* (2001) 90 Cal.App.4th 1409 [109 Cal.Rptr.2d 725] (*Gordon*). There, an auto burglary victim discovered the defendant pulling a car stereo speaker out of his car. The rear passenger window of the vehicle had been shattered into small pieces. About a month later, a police officer saw the defendant standing near another vehicle in which two men were either removing or installing a stereo. The officer found two small pieces of porcelain from a spark plug in the defendant's pants pocket. At trial, a police officer testified that thieves use pieces of ceramic spark plugs to shatter car windows because it made less noise than entry by other means. The jury convicted the defendant of violating section 466.

■ The appellate court reversed. The court observed ceramic pieces were not listed in section 466, and determined they did not fall under the "other instrument or tool" language in that section. The court relied on the doctrine of *ejusdem generis*, "which applies when general terms follow a list of specific items or categories, or vice versa. [Citation.] Under this rule, application of the general term is ' "*restricted to those things that are similar to those which are enumerated specifically*." ' [Citations.]" (*Gordon, supra*, 90 Cal.App.4th at p. 1412, italics added.) Observing the "items specifically listed as burglar's tools in section 466 are keys or key replacements, or tools that can be used to pry open doors, pick locks, or pull locks up or out," and noting that *ejusdem generis* " 'applie[s] with stringency' " in construing criminal statutes, *Gordon* concluded: "None of the devices enumerated are those whose function would be to break or cut glass—e.g., rocks, bricks, hammers or glass cutters, and none of the devices listed resembles ceramic spark plug pieces that can be thrown at a car window to break it." (*Id.* at pp. 1412–1413.) *Gordon* held that "the test is not whether a device can accomplish the same general purpose as the tools enumerated in section 466; rather, the device itself must be *similar* to those specifically mentioned." (*Id.* at p. 1413.)

■ A bag containing latex gloves is not similar to the items enumerated in section 466. As exemplified in *Gordon*, the *ejusdem generis* canon of construction presumes that if the Legislature intends a word or words to be used in an unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would constitute surplusage. (*Gordon, supra*, 90 Cal.App.4th at pp. 1412–1413; see *Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1402 [130 Cal.Rptr.3d 714] (*Martin*) [*ejusdem generis* gives significance to all words chosen by Legislature].)

The Attorney General urges us to disregard *Gordon* and instead follow *People v. Kelly* (2007) 154 Cal.App.4th 961 [66 Cal.Rptr.3d 104] (*Kelly*). There, a police officer responding to a report of an automobile burglary in progress found the defendant near a van with a shattered rear passenger window. The defendant's backpack contained a box cutter, a slingshot, and a flashlight. A police officer identified these items as burglary tools based on his experience investigating auto burglaries. He explained that burglars use a slingshot with a ceramic chip to break automobile windows, box cutters to cut car stereo wires, and flashlights to see inside dark car interiors.

*Kelly* concluded the officer's testimony constituted sufficient evidence to sustain a probation violation for possession of burglary tools. *Kelly* acknowledged as "arguably questionable" the classification of ceramic chips as an "instrument or tool" under section 466, but found a slingshot or a box cutter

fell squarely within that category. (*Kelly, supra,* 154 Cal.App.4th at p. 966.) *Kelly* noted the Legislature amended section 466 after *Gordon* to specifically include ceramic or porcelain spark plug chips or pieces among the enumerated burglary tools. (154 Cal.App.4th at pp. 966–967.) According to *Kelly,* this legislative action undermined, rather than supported, the conclusion at the time *Gordon* was decided that section 466 encompassed only items a burglar could use to unlock, pry, or pull something open. (154 Cal.App.4th at pp. 966–967.)

*Kelly* also faulted *Gordon* for resorting to *ejusdem generis* as an interpretative canon. *Kelly* found nothing ambiguous in the statutory language proscribing possession of "an instrument or tool" with the specified felonious intent. *Kelly* nevertheless relied on the Legislature's purpose behind section 466. (But see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126 [77 Cal.Rptr.3d 569, 184 P.3d 702] (*Gonzalez*) [ascertaining a statute's purpose unnecessary when its words are unambiguous].) *Kelly* concluded *Gordon's* holding "thwarts, rather than effectuates, the plain legislative purpose to deter and prevent burglaries." (*Kelly, supra,* 154 Cal.App.4th at p. 967.)

According to *Kelly, Gordon's* interpretation of section 466 would allow law enforcement to apprehend only persons "who employ a limited set of means to achieve their nefarious ends, while malfeasants who use other means to break and enter are immunized from punishment even where the evidence establishes their intent to use the tool or instrument in their possession to commit burglary. We see nothing in the statute that indicates this is what the Legislature intended. To the contrary, we think the plain import of 'other instrument or tool,' and the only meaning that effectuates the obvious legislative purpose of section 466[,] includes tools that the evidence shows are possessed with the intent to be *used* for burglary." (*Kelly, supra,* 154 Cal.App.4th at pp. 967–968, italics added.) *Kelly* did not address the "other instrument or tool . . . *to break or enter*" language in section 466 (italics added), but instead appears to suggest any item that may be put to use during the course of a burglary suffices for conviction.

Thus, the Attorney General argues under *Kelly* that "tools . . . possessed with the intent to be *used* for burglary" fall under section 466's proscription. (Italics added.) She notes the officer in this case testified burglars commonly use gloves to prevent leaving fingerprints and DNA that may later be detected at the crime scene, and they use empty bags to carry and conceal their

ill-gotten gains after gaining entry. According to the Attorney General, "under the reasoning of *Kelly*, there was sufficient evidence for the jury to conclude that the latex gloves and empty bag were instruments or tools within the scope of section 466."

■    We have found no cases holding gloves and bags, or similar articles, meet the statutory definition of burglary tools under section 466.[1] To the contrary, our review of the statute's legislative history supports an interpretation of section 466 closer to *Gordon's* than to *Kelly's*. (See *Gonzalez, supra*, 43 Cal.4th at p. 1126 ["If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy."].)

When the Legislature added "ceramic or porcelain spark plug chips or pieces" in 2002 in response to *Gordon*, legislative analyses noted the bill was intended to resolve a conflict between *Gordon* and another opinion, subsequently superseded by the Supreme Court's grant of review, which held ceramic chips *could* constitute a burglary tool. One analysis noted *Gordon* "found that an instrument is not a burglar tool just because it can accomplish the same purpose as the listed tools, but that the device must be similar to those specifically listed. . . . *This bill resolves the conflict . . . by adding ceramic or porcelain spark plugs . . . or pieces . . . to the enumerated list of 'burglar's tools' within . . .* [s]ection 466." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2015 (2001–2002 Reg. Sess.) Apr. 2, 2002, pp. 2–3, italics added.) Another analysis noted the Supreme Court likely would "consider the effect of the general reference to 'other instrument or tool' in the burglary tool statute, in light of the very specific list of items that are defined as burglary tools." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2015 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. F.) Additionally, another analysis noted, "AB 2015 will allow justice to be served *without opening section 466 to include an overly broad range of generic objects, such as rocks or pieces of tile, that could be used to break windows*." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2015 (2001–2002 Reg. Sess.) as amended June 25, 2002, p. C, italics added.)

The legislation and associated analyses demonstrate the Legislature accepted *Gordon's* application of *ejusdem generis* in interpreting section 466.

---

[1] In *People v. Carnes* (1959) 173 Cal.App.2d 559 [343 P.2d 626], the question was whether an officer had legal cause to arrest the defendant for burglary. The officer looked into the defendant's car and observed what he described as " 'numerous tools, and a radio and gloves, and a flashlight.' " (*Id.* at p. 566.) The appellate court upheld the finding of legal cause to arrest stating, "These tools and articles could fairly be described as burglar's tools." (*Id.* at p. 566.) But the court was not called upon to consider whether possession of the gloves constituted a violation of section 466.

The Legislature did not resolve the conflict concerning section 466 by amending the statute to eliminate *Gordon*'s requirement of similarity of purpose and design.[2] Rather, it added an item to the list without supplanting the usual *ejusdem generis* canon that applies when specific and general words are used together in a statute. (*Martin, supra*, 198 Cal.App.4th at p. 1402.)

■ Accordingly, we conclude section 466 is limited to instruments and tools used to break into or gain access to property in a manner similar to using items enumerated in section 466. That the perpetrator breaks into or enters property, or attempts to do so, *and* happens to have access to a tool that may be used in the course of the burglary is not enough. The tool must be for the purpose of breaking, entering, or otherwise gaining access to the victim's property. Nor is it enough that a common implement may be used for breaking and entering, given the Legislature itself has specified its intent was "to add only ceramic or porcelain spark plug chips or pieces, not other common objects such as rocks or pieces of metal that can be used to break windows, to the list of burglary tools in Section 466 of the Penal Code." (Stats. 2002, ch. 335, § 2, p. 1298.)

■ Here, there was no evidence that common latex gloves or the bag in which they were found could be used or were intended to score a breach in Painter's home defenses or otherwise gain Diaz entry or access to Painter's property, nor that these items were in any way similar to items the Legislature has set apart in section 466 for additional punishment when possessed as burglary tools. We have no authority to add gloves and bags to the statute by judicial decree, which would expand potential criminal prosecution to possession of a broad range of generic objects, contrary to legislative intent. For the foregoing reasons, we conclude substantial evidence does not support Diaz's conviction for possession of burglary tools.

## B. *The Trial Court Did Not Prejudicially Err in Failing to Define Theft**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2] When the Legislature added "bump key" to the list of items in 2008 (Stats. 2008, ch. 119, § 1), legislative analyses noted that "devices *similar to listed burglary tools* would likely be considered a burglary tool," and "[a]ppellate decisions have held that a device is a burglary tool *if it is similar in design and application to a burglary tool specifically listed* . . . ." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1554 (2007–2008 Reg. Sess.) June 18, 2008, pp. 1–2, italics added.)

*See footnote, *ante*, page 396.

## III

### DISPOSITION

Diaz's conviction for possession of burglar's tools in violation of section 466 in count 3 is reversed. The judgment is affirmed in all other respects.

Fybel, J., and Ikola, J., concurred.