Filed 8/9/16; ordered pub. 8/25/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.W., a Person Coming Under the Juvenile Court Law. | C079926 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>H.W.,<br><br>        Defendant and Appellant. | (Super. Ct. No. JV137101) |

In this Welfare and Institutions Code section 602 proceeding, the juvenile court sustained a petition charging the minor, H.W., with theft and possession of burglary tools. The minor challenges only the burglary tools finding. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On October 13, 2014, loss prevention agent Marcus Nealy and loss prevention manager Stephanie Garza were employed at a Sears department store in Yuba City. Watching the sales floor via the store's closed circuit surveillance system, Nealy saw the minor enter the store with "a backpack that looked empty" and noticed he was "looking around very suspiciously." Nealy and Garza took up separate positions on the sales floor and communicated by cell phone as they continued to observe the minor.

Garza told Nealy the minor removed the antitheft tag from a pair of jeans using a pair of pliers, carried the jeans into the restroom, and, when the minor came out of the restroom, Garza no longer saw the jeans. Nealy checked the restroom but found no jeans. Meanwhile, Garza alerted Nealy the minor was leaving the store without stopping at a cash register or attempting to pay for the jeans. Nealy headed outside to apprehend the minor.

Once outside the store, Nealy stopped the minor, identified himself as a loss prevention agent, told the minor he "knew [the minor] had concealed the . . . jeans," and escorted the minor back into the store. Garza called the police.

When Yuba City Police Officer Joshua Jackson arrived at the store, Nealy and Garza informed him the minor used "a pair of diagonal cutters or wire cutters" to remove the security tag on the jeans and placed the jeans in the backpack before leaving the store without paying for them. A search of the minor's backpack revealed the jeans and a pair of pliers.[1] The minor had no wallet, no money, no credit cards, and no identification.

Officer Jackson later testified "[p]liers are commonly used as a tool to remove tags from clothing items that have a metal pin-type securing device that cannot be broken or cut with, say, a knife."

---

[1] Both parties use the term "pliers" throughout their briefing. So do we.

2

A delinquency petition (Welf. & Inst. Code, § 602, subd. (a)), filed April 14, 2015, alleged the minor committed theft (Penal Code, section 484,[2] subd. (a)), possession of burglary tools (§ 466), and trespass (§ 602.5).

Following a contested jurisdiction hearing, the juvenile court sustained the theft and burglary tool possession allegations, but found the trespass allegation had not been proven beyond a reasonable doubt. The minor was adjudged a ward of the juvenile court and placed on juvenile probation. The juvenile court committed the minor to two days in juvenile hall with credit for time served, and set a maximum term of confinement of eight months.

The minor filed a timely notice of appeal.

DISCUSSION

The minor contends there is insufficient evidence to sustain the juvenile court's finding that he possessed a "burglar's tool," or that he possessed the pliers with the felonious intent to commit a burglary, within the meaning of section 466. We disagree.

In addressing the minor's claim, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We accord due deference to the verdict and will not substitute our conclusions for those of the trier of fact. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) A conviction will not be reversed for insufficient evidence unless it appears "that upon no hypothesis whatever is there

---

**2**      Undesignated statutory references are to the Penal Code.

3

sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Section 466 provides: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle as defined in the Vehicle Code, . . . . is guilty of a misdemeanor."

"[I]n order to sustain a conviction for possession of burglary tools in violation of section 466, the prosecution must establish three elements: (1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering." (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085 (*Southard*).) " ' "The offense is complete when tools or other implements are procured with intent to use them for a burglarious purpose." ' [Citation.]" (*Id.* at p. 1088.) Such intent is usually proven by circumstantial evidence. (*People v. Cain* (1995) 10 Cal.4th 1, 47.)

The minor asserts the pliers he possessed are not specifically identified in section 466 and do not otherwise fall within the definition of "other instrument or tool" under that statute because they were not similar to the items listed in section 466 and there was no evidence they could be used for the purpose of breaking, entering, or otherwise gaining access into a building or vehicle.

The People argue the pliers constitute an "other instrument or tool" within the meaning of section 466 because the minor concedes he intended to use the pliers to commit theft inside the store and the evidence shows he used the pliers to remove an antitheft device from the jeans he attempted to steal from the store.

4

Both parties rely in some fashion on *People v. Gordon* (2001) 90 Cal.App.4th 1409 (*Gordon*), superseded by statute as discussed in *People v. Kelly* (2007) 154 Cal.App.4th 961 (*Kelly*), and *People v. Diaz* (2012) 207 Cal.App.4th 396 (*Diaz*).  We discuss each case below.

In *Gordon*, decided by the Court of Appeal, Fourth District, Division One, the defendant was discovered pulling a car stereo speaker out of the victim's car, the rear passenger window of which had been shattered into small pieces.  Six weeks later, a police officer saw the defendant talking to two men who were inside a car either removing or installing a stereo.  The officer searched the defendant and found two small pieces of porcelain from a spark plug in his pants pocket.  At trial, a police detective testified thieves often use pieces of ceramic spark plugs to shatter car windows because that method makes very little noise.  The jury convicted the defendant of violating section 466.  (*Gordon, supra,* 90 Cal.App.4th at p. 1411.)

The court reversed.  Guided by the rule of *ejusdem generis*, "which applies when general terms follow a list of specific items or categories, or vice versa," the court noted ceramic pieces were not listed in section 466, and determined they did not fall within that section's "other instrument or tool" category.  Under the rule, "application of the general term is ' "restricted to those things that are similar to those which are enumerated specifically." '  [Citations.]" (*Gordon, supra*, 90 Cal.App.4th at p. 1412.)  Concluding that "[n]one of the devices enumerated are those whose function would be to break or cut glass—e.g., rocks, bricks, hammers or glass cutters, and none of the devices listed resembles ceramic spark plug pieces that can be thrown at a car window to break it," the court concluded "the test is not whether a device can accomplish the same general purpose as the tools enumerated in section 466; rather, the device itself must be *similar* to those specifically mentioned." (*Id.* at pp. 1412-1413, original italics.)

Several years later, the Court of Appeal, First District, Division Three, in *Kelly*, took a different view.  There, police responded to a report of an automobile burglary and

5

found a van with a shattered window. A police inspector apprehended the defendant and found inside his backpack several items, including a slingshot, a box cutter, and a flashlight. The inspector concluded, based on his experience in working burglaries, that those three items were burglary tools because "[a] slingshot is commonly used with a ceramic chip to break automobile windows; this device 'will crack the glass usually on the first hit.' Box cutters are used to cut the wires on car stereos. Flashlights are used to see inside dark car interiors." (*Kelly, supra*, 154 Cal.App.4th at p. 964.) The trial court concluded the defendant violated his probation because he was in possession of burglary tools under section 466. (*Kelly, supra,* at p. 965.)

The defendant appealed, relying on *Gordon* for the proposition that the items found were not " 'other instrument[s] or tool[s]' " within the meaning of section 466. (*Kelly, supra,* 154 Cal.App.4th at pp. 965-966.) The First District, Division Three, disagreed and affirmed. Noting it had no difficulty placing a slingshot or a box cutter within the category of " 'tools' or 'instruments' as those terms are commonly understood[:]"

"In *Gordon*, the court seems to have applied the *ejusdem generis* rule without identifying any ambiguity in section 466. We do not consider the language proscribing possession of 'any instrument or tool' with the specified felonious intent to be inherently ambiguous. But assuming that it is, *Gordon* thwarts, rather than effectuates, the plain legislative purpose to deter and prevent burglaries. [Citation.] ' "It is to be remembered that 'the doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the Legislature, and may be used to carry out, but not to defeat the legislative intent.' " [Citation.] The "major consideration in interpreting a criminal statute is the legislative purpose," and the court "will usually inquire into the evils which prompted its enactment and the method of elimination or control which the Legislature chose." ' [Citation.]

6

"Under *Gordon's* interpretation, section 466 authorizes law enforcement to apprehend only burglars and would-be burglars who employ a limited set of means to achieve their nefarious ends, while malfeasants who use other means to break and enter are immunized from punishment even where the evidence establishes their intent to use the tool or instrument in their possession to commit burglary. We see nothing in the statute that indicates this is what the Legislature intended. To the contrary, we think the plain import of 'other instrument or tool,' and the only meaning that effectuates the obvious legislative purpose of section 466 includes tools that the evidence shows are possessed with the intent to be used for burglary." (*Kelly, supra*, 154 Cal.App.4th at pp. 966, 967-968, fn. omitted.)

The court held there was "sufficient evidence to conclude that the slingshot and box cutters were instruments or tools within the scope of section 466." (*Kelly, supra,* 154 Cal.App.4th at p. 968, fn. omitted.)

Five years later, the Court of Appeal, Fourth Appellate District, Division Three, in *Diaz* revisited the issue. There, the defendant was apprehended while attempting to commit a residential burglary. The arresting officers found a large black bag containing latex gloves, and later testified that the gloves were " 'burglary tools.' " (*Diaz, supra*, 207 Cal.App.4th at p. 399.) A jury convicted the defendant of several charges, including possession of burglary tools pursuant to section 466. (*Diaz, supra,* at p. 398.)

The Court of Appeal reversed. After considering the statute's legislative history and comparing *Gordon* and *Kelly,* the court concluded its review of the legislative history supported an interpretation of section 466 closer to *Gordon*'s requirement that " 'the device itself must be similar to those specifically mentioned' " (*Diaz, supra,* 207 Cal.App.4th at p. 401, quoting *Gordon, supra,* 90 Cal.App.4th at p. 1413), than to *Kelly*'s apparent suggestion that "any item that may be put to use during the course of a burglary suffices for conviction" (*Diaz, supra,* 207 Cal.App.4th at p. 402).

7

The *Diaz* court held as follows: "[S]ection 466 is limited to instruments and tools used to break into or gain access to property in a manner similar to using items enumerated in section 466. That the perpetrator breaks into or enters property, or attempts to do so, and happens to have access to a tool that may be used in the course of the burglary is not enough. The tool must be for the purpose of breaking, entering, or otherwise gaining access to the victim's property. Nor is it enough that a common implement may be used for breaking and entering, given the Legislature itself has specified its intent was 'to add only ceramic or porcelain spark plug chips or pieces, not other common objects such as rocks or pieces of metal that can be used to break windows, to the list of burglary tools in Section 466 of the Penal Code.' (Stats. 2002, ch. 335, § 2, p. 1298.)" (*Diaz, supra,* 207 Cal.App.4th at p. 404, italics omitted.)

Finding "there was no evidence that common latex gloves or the bag in which they were found could be used or were intended to score a breach in [the victim's] home defenses or otherwise gain [the defendant] entry or access to [the victim's] property, nor that these items were in any way similar to items the Legislature has set apart in section 466 for additional punishment when possessed as burglary tools," the court concluded there was insufficient evidence to support the defendant's section 466 conviction. (*Diaz, supra,* 207 Cal.App.4th at p. 404.)

We disagree with *Gordon* and *Diaz,* agree with the analysis in *Kelly,* and conclude "the plain import of 'other instrument or tool,' and the only meaning that effectuates the obvious legislative purpose of section 466 includes tools that the evidence shows are possessed with the intent to be used for burglary." (*Kelly, supra,* 154 Cal.App.4th at pp. 967-968, fn. omitted.) Such an interpretation is consistent with the purpose of the statute which is to prevent the crime regardless of whether the tool is used to gain entry, to break into the building, or to effectuate the theft.

In our view, the interpretation of section 466 in *Diaz* is overly narrow and inconsistent with the otherwise unambiguous language of the statute. The *Diaz* court

8

held "[t]he tool must be for the purpose of breaking, entering, or otherwise gaining access to the victim's property." (*Diaz, supra,* 207 Cal.App.4th at p. 404.) However, the language of section 466 contains no such requirement, instead making it a crime to possess the specified items or an "other instrument or tool with intent feloniously to break or enter into any building . . . or vehicle." As explained by the Court of Appeal, First Appellate District, Division Two, in *Southard,* the offense is complete when the tools are " 'procured with a design *to use them for a burglarious purpose*,' " and it is " 'not necessary to allege or prove an intent to use them in a particular place, or for a special purpose, *or in any definite manner*.' "[3] (*Southard, supra*, 152 Cal.App.4th at p. 1088, italics added.)

The interpretation of section 466 in *Diaz* interjects a requirement of breaking, an element long ago eliminated from burglary under section 459. For instance, under circumstances such as those here, it has long been held that a person who enters a store with the intent to commit theft or a felony can be convicted of burglary even though entry is during regular business hours while the store is open to the general public. " '[A] party who enters with the intention to commit [larceny or] a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter. Such a party could be refused admission at the threshold, or ejected from the premises after the entry was accomplished.' " (*People v. Gauze* (1975) 15 Cal.3d 709, 713, quoting *People v. Barry* (1892) 94 Cal. 481, 483; accord, *People v. Salemme* (1992) 2 Cal.App.4th 775, 781 [a

---

[3]     In *Southard*, the defendant possessed numerous items specifically designated as burglary tools as well as other items which were not so designated, such as two black sweatshirts, a ski mask, one pair of binoculars, several walkie-talkie radios, a flashlight, and a strap-on head light. In concluding there was sufficient evidence to establish the defendant possessed burglary tools with felonious intent, the court declined to limit its consideration to only those items specifically designated within the statute as burglary tools. Rather, it considered *all* the items found when reaching its conclusion. (*Southard, supra,* 152 Cal.App.4th at p. 1090.)

person entering a structure "with the intent to commit a felony is guilty of burglary *except* when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the felonious intent"].) Put another way, a person need not use the tool or instrument he or she possesses to break into the building so long as he or she procured that tool or instrument intending to use it " 'for a burglarious purpose.' " (*Southard, supra*, 152 Cal.App.4th at p. 1088.)

Such is the case here. The minor was found to be in possession of pliers. He concedes he possessed and used those pliers for the purpose of committing theft inside the store. He entered the store with the pliers in an otherwise empty backpack, and had no credit cards, money, or other means to pay for any merchandise. Once inside the store, he used the pliers to remove an antitheft device from the jeans, secreted the jeans in the backpack, and left the store without attempting to pay. That is, he " 'procured [the pliers] with a design to use them for a burglarious purpose' " (*Southard, supra*, 152 Cal.App.4th at p. 1088), and did in fact use the pliers for the burglarious purpose of stealing the jeans. Thus, like the box cutters in *Kelly, supra,* 154 Cal.App.4th at page 968, the pliers constituted an "other instrument or tool" for purposes of section 466.

There was, therefore, sufficient evidence to sustain the juvenile court's finding the minor possessed an "instrument or tool with intent feloniously to break or enter" within the meaning of section 466.

DISPOSITION

The juvenile court's order is affirmed.

        NICHOLSON    , J.

We concur:

        RAYE        , P. J.

        BLEASE      , J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.W., a Person Coming Under the Juvenile Court Law. | C079926 |
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>H.W.,<br><br>       Defendant and Appellant. | (Super. Ct. No. JV137101)<br><br>CERTIFICATION FOR PUBLICATION |

        APPEAL from a judgment of the Superior Court of Sacramento County, Stacy Boulware Eurie, Judge.  Affirmed.

        Law Office of Robert McLaughlin and Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

THE COURT:

For good cause it now appears that the opinion in the above-captioned case filed herein on August 9, 2016, should be published in the Official Reports.  It is so ordered.

FOR THE COURT


      RAYE      , P. J.


      BLEASE      , J.


      NICHOLSON      , J.