Filed 12/7/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LINDA SHAW,<br><br>     Defendant and Appellant. | A148997<br><br>(San Francisco County<br>Super. Ct. No. SCN224910) |

Defendant James[1] Shaw used a foil-lined bag to shoplift several pairs of jeans from a San Francisco department store. A jury convicted him of second degree burglary, grand theft, and possession of burglary tools. On appeal, he claims that his conviction for possession of burglary tools lacks substantial evidence because the foil-lined bag is not a burglary tool within the meaning of Penal Code[2] section 466. We agree.

Although the Courts of Appeal that have addressed the issue have agreed that burglary tools under section 466 include items intended for use to gain access into property, they have disagreed whether burglary tools also include items intended solely to facilitate crimes committed once inside the property. The Supreme Court is currently considering a decision that is part of this disagreement. (*In re H.W.* (2016) 2 Cal.App.5th 937 (*H.W.*) (review granted Nov. 22, 2016, S237415).) Pending a decision in *H.W.*, we are compelled by the language and history of section 466 to conclude that burglary tools are limited to items intended to be used to gain access into property. As there is no

---

[1] Shaw is a transgender man who uses James as his first name. We refer to him as male, as did the parties in the trial court.

[2] All further statutory references are to the Penal Code.

dispute here that Shaw did not intend to use the foil-lined bag to gain entry into the store, we reverse his conviction under section 466.[3] Otherwise, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On September 11, 2015, an asset protection detective at the Union Square Macy's noticed Shaw "hunched over" in an area of the store where higher-value merchandise is sold. As the detective watched, Shaw "grabbed a stack of jeans from the sales counter" and placed it in a bag. He then walked away quickly, heading toward the exit. The detective followed and, with the aid of another Macy's employee, stopped Shaw as soon as he left the building. Shaw resisted, fell to the ground, and appeared to have a seizure.

An H&M bag recovered from Shaw contained 11 pairs of True Religion jeans. Inside the bag was "a secondary bag" lined with foil. The detective testified that the secondary bag was a "booster bag," which is "used by professionals [to] try to evade the security device at the customer exit/entrance doors" by preventing sensors on the merchandise from setting off an alarm.

Shaw was charged with a felony count of second degree commercial burglary, a felony count of grand theft of personal property, and a misdemeanor count of possession of burglary tools.[4] The jury convicted him of all charges, and the trial court suspended imposition of the sentence and placed him on probation for two years.

II.
DISCUSSION

Shaw contends that insufficient evidence supports his conviction for possession of burglary tools because section 466 covers only "tools or instruments that can be used in

---

[3] As a result, we need not address Shaw's contention that the jury was improperly instructed on the elements of that offense.

[4] The charges were brought under sections 459 (burglary), 487, subdivision (a) (grand theft), and 466 (possession of burglary tools). Shaw was also charged with burglary and grand theft based on a later incident at Macy's, but the trial court declared a mistrial on those charges after the jury deadlocked on them, and we do not discuss them further.

the very process of breaking and entering." We agree with him that the foil-lined bag falls outside of the definition of burglary tools under section 466.

Generally, in evaluating claims challenging the sufficiency of the evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Our review is de novo to the extent a claim raises issues of statutory interpretation. (*People v. Elder* (2014) 227 Cal.App.4th 411, 417.)

Under section 466, it is a misdemeanor for a person to possess "a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle as defined in the Vehicle Code." To support a conviction under this statute, the People must prove "(1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering." (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085.)

Since the statute does not specifically list a foil-lined bag as a burglary tool, the question here is whether such a bag can be considered to be an "other instrument or tool [that is possessed] with intent feloniously to break or enter into [property]." An early case to address whether an item not specifically listed in section 466 could be considered an "other instrument or tool" was *People v. Gordon* (2001) 90 Cal.App.4th 1409 (*Gordon*). When *Gordon* was decided section 466 did not, as it does now, specifically list spark plug chips or pieces, which can be used to break glass quietly. (*Gordon*, at pp. 1411-1412.) Division One of the Fourth District Court of Appeal held that spark plug chips or pieces did not constitute an instrument or tool within the meaning of section 466.

3

(*Gordon*, at p. 1412.)  Applying the principle of ejusdem generis, under which the scope of a general term that follows specific items is " ' "restricted to those things that are similar to those which are enumerated specifically," ' " the court determined that the items listed in the then-existing statute were limited to "keys or key replacements, or tools that can be used to pry open doors, pick locks, or pull locks up or out" and "[n]one of the devices enumerated [were] those whose function would be to break or cut glass." (*Ibid.*)  Thus, the premise of *Gordon*'s holding was that burglary tools under section 466 were limited not only to items intended for use to gain access into property but more specifically to items intended for use to gain access into property in a particular manner.

In response to *Gordon*, the Legislature amended section 466 by adding "only ceramic or porcelain spark plug chips or pieces, [but] not other common objects such as rocks or pieces of metal that can be used to break windows." (Stats. 2002, ch. 335, § 2.) Although this response demonstrates the Legislature's belief that *Gordon*'s interpretation of the statute was too narrow, nothing in either the amendment itself or its history suggests that the Legislature disagreed with *Gordon*'s broader premise that burglary tools within the meaning of section 466 are limited to items intended to gain access into property.

Subsequent cases have drawn different lessons from the amendment.  In *People v. Kelly* (2007) 154 Cal.App.4th 961 (*Kelly*), Division Three of this Court considered whether a sling shot and a box cutter could be considered instruments or tools within the meaning of section 466.  (*Kelly*, at p. 963.)  In a ruling with which we agree, *Kelly* concluded that the sling shot was such an instrument or tool because testimony had been presented that burglars use sling shots to fling porcelain chips at vehicle windows to break them and gain access into the interior.  (*Id.* at p. 968.)  The court remarked, correctly in our view, that "[t]he legislative response to *Gordon* undermines [that decision's] conclusion that section 466 was intended to encompass only items that can be used to unlock, pry, or pull something open."  (*Id.* at pp. 966-967.)

But in a ruling with which we disagree, *Kelly* concluded that the box cutter was also a burglary tool because testimony had been presented that burglars use box cutters to

4

cut car-stereo wires after gaining access into vehicles. (*Kelly, supra*, 154 Cal.App.4th at p. 968.) In deciding that any tool used in the course of a burglary is a burglary tool under section 466, the court stated that "the plain import of [the section's reference to] 'other instrument or tool,' and the only meaning that effectuates the obvious legislative purpose of section 466 [to prevent burglaries,] includes tools that the evidence shows are possessed with the intent to be used for burglary." (*Kelly*, at pp. 967-968.) We think, to the contrary, that the statute's language plainly limits burglary tools to include only items intended to gain access into property.

In *People v. Diaz* (2012) 207 Cal.App.4th 396 (*Diaz*), Division Three of the Fourth District Court of Appeal weighed in and disagreed with *Kelly*'s determination that any item intended to be used at any time in the course of a burglary is a burglary tool. (*Diaz*, at p. 403.) *Diaz* considered the Legislature's amendment to be a tacit approval of *Gordon*'s reliance on the principle of ejusdem generis, and it pointed to legislative expectations that the section's phrase "other instrument or tool" was to be interpreted in light of the listed items and not " 'to include an overly broad range of generic objects, such as rocks or pieces of tile, that could be used to break windows.' " (*Diaz*, at p. 403, italics omitted.) *Diaz* therefore rejected *Kelly*'s suggestion that "any item that may be put to use during the course of a burglary suffices for conviction" and held that "section 466 is limited to instruments and tools used to break into or gain access to property in a manner similar to using items enumerated in [the statute]. That the perpetrator breaks into or enters property, or attempts to do so, *and* happens to have access to a tool that may be used in the course of the burglary is not enough. The tool must be for the purpose of breaking, entering, or otherwise gaining access to the victim's property." (*Diaz*, at pp. 402, 404.) Applying this rule to facts before it, the court concluded that the items at issue, latex gloves and a large plastic bag, were not burglary tools because no evidence suggested that the defendant intended to use them to break or enter into property. (*Id.* at pp. 399, 404.)

Finally, in *H.W.*, the Third District Court of Appeal agreed with *Kelly* that section 466 " 'includes tools that the evidence shows are possessed with the intent to be

5

used for burglary.' " (*H.W., supra*, 2 Cal App 5th at p. 944.) Disagreeing with *Diaz*, *H.W.* held that section 466 does not require that the item be intended to gain access to property, and it read *Diaz* to improperly "interject[] a requirement of breaking, an element long ago eliminated from burglary under section 459." (*H.W.*, at p. 945.) Applying *Kelly*'s interpretation of section 466 to the facts before it, the court held that a pair of pliers used to cut security tags off a pair of jeans was a burglary tool under the statute. (*H.W.*, at p. 945.)

We find the reasoning of *Diaz* to be more persuasive, and we agree with its holding that an "instrument or tool" under section 466 is an item intended for use " 'to break into or gain access to property,' " not just intended for "use during the course of a burglary." (*Diaz, supra*, 207 Cal.App.4th at pp. 402, 404.) Our conclusion is based not only on *Diaz*'s application of the principle of ejusdem generis and analysis of section 466's legislative history, with which we concur, but also on two additional factors: the statutory language's focus on the element of entry, and the absurd expansion of the statute's scope that would result from interpreting burglary tools to include any item used to facilitate crimes committed once a defendant is inside property. We discuss these additional two factors in turn.

First, section 466 criminalizes possessing instruments or tools "with intent feloniously to break or enter into" property. Had the Legislature intended to criminalize the possession of any instrument or tool that could be used to commit any portion of a burglary, it could have simply referred to the required intent as the "intent to commit burglary" instead of phrasing it to emphasize the element of entry. Moreover, as *H.W.* observed (albeit in making a different point), breaking is no longer a required element of burglary under section 459 (*H.W., supra*, 2 Cal.App.5th at p. 945), but section 466 still refers to an intent to break or enter, not just enter. In our view, the statutory language's focus on gaining access to property is at odds with the view that the statutory definition includes any instrument or tool that is intended for use to commit crimes after access has been obtained.

Second, under California law burglary is an entry with the intent to commit *any* felony, not just theft-related offenses. A burglary is complete "upon entry with the requisite intent to commit a felony or a theft . . ., regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) Thus, the only element common to all burglaries is entry. Under *Kelly* and *H.W.*'s interpretation of section 466, burglary tools include any item that a defendant intends to use to commit any felony inside the entered property. In our view, it is absurd to consider items to be burglary tools when they are intended for use solely to facilitate non-theft related crimes. A piece of rope, for example, is not a burglary tool just because a defendant broke into a house intending to strangle an occupant. And a book of matches is not a burglary tool just because a defendant went into a store intending to burn it down. Limiting the definition of burglary tools to items that are intended to gain access to property avoids such unreasonable applications.

We find support for our reasoning in *People v. Davis* (1998) 18 Cal.4th 712 (*Davis*), in which the Supreme Court addressed whether a defendant could be convicted of burglary under section 459 on the basis that he placed a forged check in a chute in a walk-up window of a check-cashing business. (*Davis*, at p. 714.) Although burglary "can be committed by using an instrument to enter a building," not just by entering with one's body, the Court concluded that passing a forged check into a building did not qualify as burglary. (*Id.* at pp. 714, 716.) It explained, "It is important to establish reasonable limits as to what constitutes an entry by means of an instrument for purposes of the burglary statute. Otherwise the scope of the burglary statute could be expanded to absurd proportions," so that even mailing a forged check to a bank could constitute burglary. (*Id.* at p. 719.) Observing that "the 'underlying basis for the criminal sanction' of burglary is ' "the danger caused by the unauthorized entry itself," ' " the Court determined that the insertion of a forged check into a chute in a walk-up window did not qualify as entry by instrument because it did not "violate[] the occupant's possessory interest in the building." (*Id.* at p. 722.)

7

*Davis*'s emphasis that the primary purpose of section 459 is to criminalize dangerous *entries* is at odds with the notion that section 466 should be interpreted to cover any instrument or tool that can be used to facilitate any aspect of a burglary. Because neither the statutory language nor legislative history supports such an expansive reading of section 466, we conclude that an item does not qualify as a burglary tool under that statute unless it is intended to gain access into property. As there is no evidence that Shaw used or intended to use the foil-lined bag to gain entry to Macy's, his conviction under section 466 must be reversed.

## III.
### DISPOSITION

The conviction for possession of burglary tools is reversed. The judgment is otherwise affirmed.

_____

Humes, P.J.

We concur:


_____

Margulies, J.


_____

Dondero, J.

People v. Shaw  A148997

9

Trial Court:

San Francisco County Superior Court

Trial Judge:

Hon. Samuel K. Feng

Counsel for Defendant and Appellant:

Robert V. Vallandigham, First District Appellate Project

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Alice B. Lustre, Deputy Attorney General

Gregg E. Zywicke, Deputy Attorney General

People v. Shaw  A148997