Filed 11/16/20  In re O.L. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re O.L., a Person Coming Under the Juvenile Court Law. | C090726 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>O.L.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV138462) |

The minor, O.L., appeals the juvenile court's order committing him to the Division of Juvenile Justice (the Division), arguing:  (1) substantial evidence does not support the allegation that he violated his probation by failing out of his level B placement; (2) the trial court erred under Evidence Code section 352 in allowing a gang expert to testify at the disposition hearing; and (3) the trial court erred in committing the minor to the

1

Division rather than returning him home to live with his mother. We affirm the trial court order.

## FACTS AND PROCEDURAL HISTORY

### *The Initial Petition*

The People's February 16, 2017, wardship petition alleged the minor, who was then 14 years old, had violated the law by: carrying a loaded firearm in a vehicle while in a public place and of which he was not the registered owner (Pen. Code, § 25850, subds. (a), (c)(6); count one), undesignated section references are to the Penal Code; carrying a concealed firearm (§ 25400, subd. (a)(3); count two); unlawful possession of a firearm capable of concealment by a minor (§ 29610; count three); and manufacture of a large capacity magazine (§ 32310; count four).

On May 10, 2017, the minor resolved this petition by admitting to a felony violation of count one. The remaining counts were dismissed in the interests of justice. The factual basis for his plea was that the minor was a passenger in a vehicle that was pulled over, and a Glock 26 nine millimeter handgun that he had previously purchased was on the floorboard in front of him. The minor was adjudged a ward of the court and placed on probation subject to the recommended conditions. He was also committed to juvenile hall for 13 days with credit for 13 days served, 46 days electronic monitoring with credit for 46 days served, and finally 57 days home confinement with credit for 27 days served.

### *The Second Petition*

On July 5, 2017, a subsequent petition was filed in Placer County mere weeks after the minor had been released from home confinement. This petition alleged the minor committed second degree robbery (§ 211; count one); conspiracy to commit theft (§§ 182, subd. (a)(1), 484; count two); and attempted residential burglary in the first degree (§§ 654, 459; count three). On July 17, 2017, the minor admitted committing

2

robbery, it was stipulated the offense would not be a strike, the balance of the charges were dismissed, and the matter was transferred to Sacramento County for disposition.

Sacramento County accepted the transfer and set the matter for disposition. According to probation's addendum report, the minor and two other individuals forced employees of a drug store to open the narcotics safe and then fled with narcotics via a waiting vehicle. The vehicle crashed during a pursuit, and they fled on foot. The minor tried unsuccessfully to gain entrance to a residence, and ultimately, jumped a fence and hid in a garbage can before he was apprehended.

On August 16, 2017, the minor was continued a ward of the court and ordered to serve 90 days in juvenile hall with credit for 45 days. He would be subject to 30 days of electronic monitoring upon his release and return to his parents.

*The Minor Violates Probation and Absconds*

On December 7, 2017, the People filed a petition alleging that the minor had violated his probation by remaining away from home at night without the permission of his father, remaining away from home for more than 48 hours without the permission of his probation officer, and for failing to attend school/tardiness of more than 30 minutes on December 4th, 5th and 6th of 2017 without a valid excuse. The minor's father last reported seeing him on December 4, 2017. In response, the court issued a warrant for the minor's arrest. However, the minor remained at large until arrested on that warrant in Kansas City, Missouri on May 31, 2018. The minor was returned to Sacramento County and his intake report noted he was a person of interest in a homicide and may have been subject to a *Ramey* (*People v. Ramey* (1976) 16 Cal.3d 263) warrant.

Thereafter, on June 12, 2018, the minor admitted to being away from home without his father's permission in exchange for dismissal of the remaining counts and 15 days in juvenile hall with credit for 13 days served. His probation was revoked and

3

reinstated, and he was ordered to serve 30 days on electronic monitoring following his release from juvenile hall.

### *A New Petition and Motion to Transfer to Adult Court*

On June 15, 2018, the People filed a petition and motion to transfer the minor to adult court, alleging the minor had committed a robbery on April 26, 2017. The intake report noted that DNA matching the minor had been recovered following a robbery of narcotics from a drug store in Elk Grove.

The People amended this petition on June 25, 2018. The amended petition alleged that, in addition to robbery occurring in April 2017 (§ 211; count one), on November 10, 2017, the minor carried a concealed weapon in a vehicle (§ 25400, subd. (a)(1); count two); carried a loaded firearm on his person and in a vehicle (§ 25850, subd. (a); count three); possessed a firearm capable of concealment (§ 29610; count four); and possessed a firearm (§ 29820, subd. (b); count five).

Thereafter, the minor remained detained pending determination on the transfer motion, including the minor's arguments that he would no longer be subject to transfer following the enactment of Senate Bill No. 1391. On January 28, 2019, the juvenile court granted the People's request to dismiss the motion to transfer. This same day, the parties resolved the pending charges by adding a probation violation. The minor then admitted to violating probation by illegally possessing a weapon; the robbery would be dismissed. The court took under submission the parties' agreement to dismiss the remaining counts in the interests of justice. It was agreed that the court would decide the appropriate disposition and probation was directed to prepare a placement recommendation and disposition report.

The probation department's March 8, 2019, disposition report recommended the minor be placed in a level B facility out of state given the seriousness and sophistication of his offenses, his deep entrenchment in gangs, and his history of running away and

4

staying away for long periods of time. The placement committee considered, but rejected, community-based treatment because of the minor's need for a higher level of structure, supervision, and treatment.

At the disposition hearing, minor's counsel argued at length that the time for a level B placement had passed and the minor should be returned home to live with his mother given his lengthy stay in juvenile hall of approximately 280 days. The minor had been previously motivated to complete a level B program when he was facing a transfer to adult court, but that time had passed. The People disagreed stressing that a level B placement was needed to address the minor's significant rehabilitative needs and history, including that the minor had been involved in two robberies, possessed firearms, was involved in gangs, used marijuana, and, though he had been shot, he was uncooperative with any investigation into that shooting.

Ultimately, the court counseled the minor, who was then 17, that this was his "last best chance" to reform and proceed through life without a permanent criminal record. With that in mind, the court ordered the minor to participate in level B treatment at Woodward Academy in Iowa. Counts one through five of the June 25, 2018, petition were dismissed as previously agreed, with the robbery count being subject to consideration for dispositional purposes.

### *The Contested Violation of Probation Following the Minor's Failed Placement*

The People's June 3, 2019, petition for violation of probation alleged that the minor had been placed at Woodward Academy on April 9, 2019, and had violated his probation by failing to abide by the reasonable directives of his probation officer and program staff resulting in the minor's termination from that placement on May 20, 2019. The People also moved to have the minor committed to the Division.

At the contested violation hearing, placement probation officer Charlene Gehrt testified to being the minor's placement officer. She met with the minor prior to his

5

placement, explaining he was to be placed at Woodward, and that at Woodward, he would be expected to participate in that program's " 'positive peer culture' " that asks peers to hold each other accountable. On April 16, 2019, Officer Gehrt visited the minor after approximately one week of placement. His adjustment to the program had been "fair." The minor privately complained that he did not want to participate in the positive peer culture because he did not want to be a snitch. Officer Gehrt warned the minor that positive peer culture was necessary for successful completion of the program. The minor also complained about the number of rules, the difficulty in obtaining privileges, and that the staff were confronting him over little things. He expressed a preference to return to juvenile hall or an in-state program, but Gehrt advised he had been court ordered to complete the Woodward program and encouraged him to work the program.

By Officer Gehrt's second visit on May 21, 2019, Woodward had decided to terminate the minor from the program. The minor's participation had been poor. For example, he still held the same status as at admission, indicating he was not working the program. The program also reported the minor was a danger to the program, had incited riotous situations, and had encouraged other participants to fight. When discussing his potential termination, the minor asked about what would happen upon his return and what would happen if he left the program without probation. He also expressed a preference to just do his time in juvenile hall.

Following counsels' argument, the juvenile court determined the minor had violated his probation by failing to follow the reasonable directives of his probation officer and the placement program, resulting in his termination.

### The Contested Disposition and Commitment to the Division

Over the minor's objection, the People presented Detective Kenny Shelton, who testified as an expert in south Sacramento area black gangs. Detective Shelton had monitored the minor's gang activity since he was 13 or 14 years old. The minor's social

6

media posts from 2015 to as late as early 2018 showed him promoting the Stick Up Starz and Guttah Gas (two related gangs) as well as associating with well-known gang members. The posts displaying the minor with guns simultaneously flashing gang signs showed he was an armed member of the gang who was willing to inflict violence on rival gangs and the community. Detective Shelton documented the minor as a member of the Stick Up Starz, but that probation listed him as a member of the Meadowview Blood gang was not necessarily inconsistent because of hybrid associations currently used by younger gang members.

The minor presented the testimony of his mother Sametha Woodard and Randal Broadhurst of the Gang Awareness and Prevention (GAP) program in support of his request to be released to Woodard's home. Woodard testified that if the minor were allowed to live with her, he would be in Citrus Heights and would attend San Juan High School, although she had not met with the school.

Broadhurst testified as an expert in the area of gangs, gang awareness, and gang prevention. He did not think the minor should go to the Division because it would set back the progress Broadhurst had recently seen in him through the GAP program. Instead, Broadhurst suggested the minor participate in construction training in the afternoons and work with a mentor.

The minor, who was then 17.5 years old, also testified on his own behalf, explaining the pictures of him offered by the People were from when he was 13 to 15 years old. He wanted "the fame" and to "fit it," but the decisions he made were dumb. When the minor ran away and stayed with his uncle in Kansas City, he helped him "flip" houses and this inspired him to become a Realtor. His participation in the construction program would help him achieve that goal because he could do his own work and flip houses for a greater profit. The minor wanted to get out of Sacramento completely and move back with his uncle, but would first live with his mother and complete high school and the construction program. He had been participating in the GAP program and was

learning how to control his anger and get a job. He had also completed some programming in juvenile hall and promised that if released, he would not return to his former ways or friends.

On cross examination, the minor denied being in a gang when he committed the drug store robbery or that he had acted with gang members. Rather, he claimed that he only became a gang member in early 2017. He also minimized much of his other behavior, claiming the $1,495 in cash he was stopped with in February 2017 was from mowing lawns and sweeping barber shops, even though he had a gun on him, which he purchased for protection. He also denied being shot, stating he was only grazed and admitted that he would not let the police take his picture at the hospital. He further admitted owning a Lexus at age 15, that the police stopped him driving it on more than one occasion, but denied that the gun recovered from the sunroof of that car was his. It had been four months since the minor had thrown a gang sign, and he decided he no longer was a member of the gang about two months before, after discussing it with his mother and seeing how much his behavior upset her. The minor denied that he would use marijuana if released, despite admitting daily usage when not locked up.

Following the argument of counsel, the juvenile court elected to send the minor to the Division because the court determined the minor did not yet understand why he had engaged in dangerous conduct and habitually used marijuana. The minor still needed to learn how to live without falling back into his old behavior. The court expressed a hope that the minor would continue his positive trajectory and would be able to participate in fire camp, but noted that if he did not, the Division would have the requisite programming to address his issues, including his gang affiliation. The minor's maximum confinement time was five years eight months, and he was awarded 542 days custody credits. The minor timely appealed.

DISCUSSION

I

*The Contested Probation Violation*

The minor argues the juvenile court erred in finding that the minor violated his probation. He argues the court abused its discretion "because the probation officer was not in favor of the minor's termination from the program, and Woodward failed to follow proper procedures in terminating him." We disagree.

In reviewing the minor's claim of error, we stress that in juvenile court, as in adult proceedings, "[t]he facts alleged in the notice [of probation violation] shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order." (Welf. & Inst. Code, § 777, subd. (c); *In re Eddie M*. (2003) 31 Cal.4th 480, 501.) Probation violation hearings in juvenile court under Welfare and Institutions Code section 777 parallel those in adult court under Penal Code section 1203.2 in all important respects. (*In re Eddie M*., at pp. 501-502.) "Trial courts are granted great discretion in deciding whether or not to revoke probation. [Citation.] 'Absent abuse of that discretion, an appellate court will not disturb the trial court's findings.' [Citation.]" (*People v. Kelly* (2007) 154 Cal.App.4th 961, 965.) Mindful of the relaxed burden of proof in probation violation hearings and the deferential standard of review, we conclude there was sufficient evidence presented to support the juvenile court's conclusion that the minor's behavior resulting in his termination from Woodward constituted a violation of his probation.

Included among the minor's conditions of probation was that he, "Obey all laws and reasonable directives of group home staff, school officials and the Probation Officer." Officer Gehrt testified at the contested violation hearing to meeting with the minor prior to placement and approximately one week into his placement, instructing him to participate in the Woodward program. However, in contravention of that condition,

9

the minor refused to meaningfully participate in the Woodward program. Even worse, the minor engaged in dangerous behavior, for example, inciting riotous situations, encouraging other participants to fight, and threatening staff. The minor's nonconformance is further demonstrated by his informing Officer Gehrt on more than one occasion that he did not want to "snitch" on other participants at the program and preferred to do his time in juvenile hall. Given his behavior, Woodward ultimately terminated him from the program.

Accordingly, we find the trial court did not abuse its discretion in determining that the minor violated his probation by failing to follow the reasonable directives of his probation officer and group home staff resulting in his termination. (*People v. Kelly, supra*, 154 Cal.App.4th 965.) The minor's complaints that Officer Gehrt would have worked more with him (but for his termination) and that the placement failed to hold a family team meeting prior to terminating him without a discharge plan, do not invalidate the substantial evidence supporting the court's determination that the minor had violated his probation. (See *People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849 [all conflicting inferences must be resolved in support of the decision if trial court's findings are supported by substantial evidence].) Nor is there any evidence in the record supporting the minor's arguments raised for the first time in his reply brief that he was terminated from the program due to his unsubstantiated complaint of inappropriate touching by a staff member. The minor did not complain of inappropriate touching at Gehrt's April 16, 2019, visit or at the May 21, 2019 visit. Further, nothing in the record suggests this complaint was ever determined to be founded. Rather, the minor's father said it had not been.

*The Expert Testimony*

Prior to the contested disposition hearing and over the minor's relevancy objection, the People obtained the court's preliminary approval to present testimony regarding the minor's prior gang entrenchment going back to 2017, which the court determined would be admissible as part of the minor's "entire prior history."  At the outset of the contested disposition hearing, the minor renewed his objection to the proposed gang expert testimony of Detective Kenny Shelton, arguing it was irrelevant and inappropriate character evidence.  The People represented Detective Shelton would explain the minor's gang membership as pertinent to his gang entrenchment and what could happen if the minor was allowed to return home.  The People argued this information was relevant to whether it would be appropriate to send the minor to the Division or release him home as requested.  The court overruled this objection, as well as another renewed objection, finding the information was admissible under section 706 of the Welfare and Institutions Code.

The minor now argues Detective Shelton's testimony was not needed and the trial court erred under Evidence Code section 352 in allowing its admission.  To the extent the minor's arguments rest on the application of Evidence Code section 352, the minor, having failed to raise that argument in the juvenile court, is precluded from raising it on appeal.  (Evid. Code, § 353, subd. (a); see *People v. Nelson* (2012) 209 Cal.App.4th 698, 711 [citing *People v. Doolin* (2009) 45 Cal.4th 390, 434 for proposition that "failure to raise a specific objection to the admission of evidence results in forfeiture of appellate review"].)  Further, we are not persuaded that the juvenile court erred in allowing Detective Shelton's testimony on relevancy grounds.

Welfare and Institutions Code section 706 mandates that the juvenile court at the disposition hearing "shall receive in evidence the social study of the minor made by the

probation officer and any other relevant and material evidence that may be offered. . . ." While this necessarily includes the ability of the juvenile court to limit evidence under Evidence Code section 352 (*In re Romero C.* (1995) 33 Cal.App.4th 1838, 1845), the court is authorized to admit relevant evidence without strict adherence to the Evidence Code. (See *In re Vincent G.* (2008) 162 Cal.App.4th 238, 243-244 [recognizing the rules of evidence do not strictly govern disposition hearings and thus the court did not error in admitting the minor's hearsay], validity questioned on other grounds in *People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1127 [regarding scienter requirements related to probation conditions]; *In re Michael V.* (1986) 178 Cal.App.3d 159, 170 ["sections 706 and 725.5 of our juvenile court law expressly authorize the juvenile court to receive and consider otherwise inadmissible evidence at the disposition hearing so long as it is relevant and material to the disposition issue"].)

Here, the juvenile court was required to consider "the minor's previous delinquent history" (Welf. & Inst. Code, § 725.5), which necessarily included his prior gang involvement. The probation report prepared in relation to his last probation violation disclosed that both the minor and his father denied that the minor was a gang member, but that information in previous social study and police reports identified the minor as a member of the Meadowview Blood gang. This cursory information was greatly expanded upon by Detective Shelton's testimony as we shall explain.

Although it was possible that the minor was associated with the Meadowview Bloods, Detective Shelton, who had been monitoring the minor since age 13 or 14, identified the minor as a member of the Stick Up Starz. The minor associated with well-known gang members of both the Stick Up Starz and Guttah Gas gangs. Further, his social media posts documented the minor's outward promotion of the Stick Up Starz and Guttah Gas gangs, including his status as an armed gang member who was willing to inflict violence on rival gangs and the community. This was consistent with the minor's multiple arrests and adjudications for gun possession and later admission at the

12

disposition hearing to gang membership beginning in 2017, continuing until a few months before the disposition hearing. It is undeniable the broader understanding of the minor's gang involvement was essential to the court's determination of how best to rehabilitate the minor while keeping the community safe. Thus, the minor has not demonstrated the juvenile court erred in admitting this information.

III

*The Minor's Commitment to the Division*

The minor argues the juvenile court erred in committing the minor to the Division because "the minor had a solid plan to reside with his mother in a different neighborhood where he would be employed, participate in counseling, and continue a relationship with his trusted gang mentor." This argument misapprehends the appropriate scope of appellate review.

" 'The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision.' [Citation.] 'A [division] commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' [Citation.] 'Although the [Division] is normally a placement of last resort, there is no absolute rule that a [Division] commitment cannot be ordered unless less restrictive placements have been attempted.' [Citation.] [¶] We examine the evidence in light of the purposes of the juvenile court law. (*In re Michael R.* (1977) 73 Cal.App.3d 327, 333; *In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542 [purposes of the juvenile system include 'the protection of the public as well as the rehabilitation of the minor'].)" (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080-1081.)

Here, in considering the appropriateness of the minor's request to return home, the court weighed the skills he then had, the skills that could be gained through the GAP program, work, and weekly counseling against the minor's history of dangerousness.

13

The court also noted that placement at either a level A or a level B program was not available. In light of this, the court determined it was in the minor's best interest to be committed to the Division and that the minor's proposal was insufficient to meet his needs. In the court's view, the minor did not understand why he engaged in wrongful behavior, and thus, while he was motivated to change, the court did not think he understood how to keep himself from engaging in prohibited conduct in the future. Accordingly, the court determined there was no suitable alternative to a Division commitment and that the minor would benefit from the programming there.

We concur that the record demonstrates the minor's probable benefit from a Division commitment. (*In re A.R.*, *supra*, 24 Cal.App.5th at p. 1080.) From the moment the minor was placed on probation, he continued to commit dangerous crimes during the short period of time that he was out of custody. The minor's first wardship petition for various gun-related counts was brought in February 2017 when he was 14 years old. While this case was pending, the minor committed the robbery in Elk Grove that was later dismissed with consideration by the juvenile court. The minor resolved his initial petition in May 2017, only to be brought back before the court for another robbery which occurred in July 2017, mere weeks after the completion of his home confinement on the initial petition.

Thereafter, the minor was continued as a ward and in juvenile hall and/or on home confinement until October 2017. He was stopped with a concealed firearm in his car in November 2017. Shortly thereafter at the beginning of December 2017, the minor ran away and remained at large until he was arrested on an outstanding warrant at the end of May 2018. On June 12, 2018, the minor admitted violating his probation by running away. Shortly thereafter, the People filed a new law violation petition seeking his transfer to adult court. This petition and motion remained pending for some time and were ultimately dismissed after the California Legislature modified the law so that juveniles whose offenses occurred when they were 15 years old were not subject to

14

transfer. The minor ultimately resolved the matter by admitting violating his probation for the November gun possession and the April 2017 robbery count was dismissed with consideration.

Following this resolution, the juvenile court sent the minor to a level B placement for treatment and counseled him that this was his "last best chance" to reform and proceed through life without a permanent criminal record. However, the minor failed the level B treatment program within five weeks of his admission. Reasons cited for this failure included his incitement of riotous behavior in other participants, as well as encouraging others to fight. The minor, for his part, expressed a preference to just do his time in juvenile hall.

Further supporting that the minor would benefit from confined treatment at the Division, as explained by Detective Shelton, the minor's gang activity had been monitored by Shelton since the minor was 13 or 14 years old. The minor's social media posts from 2015 to as late as early 2018 showed him promoting multiple gangs and associating with well-known gang members. The minor held himself out as an armed member of the gang willing to inflict violence on rival gangs and the community. Detective Shelton documented the minor as a member of the Stick Up Starz, which was consistent with the minor's disposition hearing admission to gang membership beginning in 2017 and continuing until a few months before the disposition hearing.

Against this formidable evidence, the juvenile court was not obligated to accept the evidence presented by the minor suggesting the minor had recently changed and would be safe to rehabilitate at home with his mother, and neither are we. (See *In re A.R.*, *supra*, 24 Cal.App.5th at p. 1080 [reviewing court must draw all reasonable inferences in support of the juvenile court's decision].) Accordingly, the minor has not shown the juvenile court abused its discretion in committing him to the Division.

DISPOSITION

The judgment is affirmed.

_____
HULL, J.

We concur:

_____
RAYE, P. J.

_____
ROBIE, J.